KROHN v BOARD OF MEDICINE

Docket No. 45895. Submitted April 9, 1980, at Lansing.—Decided May 8, 1980. Leave to appeal denied, 409 Mich 934.

Don R. Krohn, M.D., was charged with immoral conduct under a section of the Medical Practice Act. A hearing examiner found that Krohn had engaged in the conduct charged, and those findings were adopted by the Michigan Board of Medicine, which imposed disciplinary sanctions against Krohn. Krohn sought review of the board's findings in the Oakland Circuit Court, which held that the board was in error and struck all the disciplinary action except for a provision that Krohn undergo a medical regimen related to the health problem which allegedly was responsible for the actions with which he was charged, Francis X. O'Brien, J. The circuit court held that a new standard, that of "good moral character" found in the newly-enacted Public Health Code, should be applied. Krohn had been found by the hearing examiner to be a man of good moral character. The Michigan Board of Medicine appeals.
*Held:*

1. The trial court erred in applying the newly-enacted standard of "good moral character". The proper standard was that expressed in the statute in effect at the time of Krohn's actions. The board, therefore, had applied the proper standard.

2. Krohn alleged that the failure of the Medical Practice Act to define "immoral conduct" rendered the act vague and therefore violated the constitutional guarantee of due process. The term "immoral conduct" has a definite and well-defined meaning and encompasses innumerable situations. The leeway in the application of the statute is well within the exercise of discretion of the Board of Medicine.

Reversed, and the order of the Board of Medicine is reinstated.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 418 *et seq.*
[2] 2 Am Jur 2d, Administrative Law §§ 113, 116.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 49, 66.

1. Statutes — Repeal of Statutes — Continued Effect of Statutes.

The repeal of a statute does not release or relinquish any penalty, forfeiture or liability incurred under the statute unless the repealing act expressly so provides; the repealed statute is to be treated as being in force for the purpose of bringing or sustaining an action for the enforcement of the penalty, forfeiture or liability (MCL 8.4a; MSA 2.214).

2. Administrative Law — Due Process — Standards.

Substantive due process requires the existence of reasonably precise standards to be utilized by administrative agencies in the performance of their delegated legislative tasks; such standards must be as reasonably precise as the subject matter requires or permits.

3. Physicians and Surgeons — Statutes — Medical Practice Act — Immoral Conduct.

The term "immoral conduct" as used in the former Medical Practice Act has a definite and well-recognized meaning and encompasses innumerable situations; the leeway in the application of the statute is well within the exercise of discretion of the Michigan Board of Medicine (MCL 338.1811[2][h]; MSA 14.542[11][2][h]).

*Turner, Mead, Wilson & Turner,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas L. Sparks,* Assistant Attorney General, for defendant.

Before: D. C. Riley, P.J., and R. B. Burns and N. J. Kaufman, JJ.

Per Curiam. Defendant Michigan Board of Medicine appeals a circuit court order which amended the board's final order of discipline against plaintiff Don R. Krohn, M.D. After an investigation by the board, the Attorney General had issued a complaint charging plaintiff under § 11 of the Medical Practice Act, MCL 338.1811; MSA 14.542(11). It was alleged that plaintiff's conduct in the early morning hours of October 1, 1976, consti-

tuted immoral conduct within the meaning of MCL 338.1811(2)(h); MSA 14.542(11)(2)(h).

A hearing was held on the matter and the hearing examiner found that plaintiff had engaged in the charged conduct which included the uninvited entry of two homes in Bloomfield Hills, Michigan, and a sexual attack on a woman in the second home. Part of this attack was viewed by the woman's daughter and when a man and another woman tried to rescue the victim they were struck or pushed by plaintiff. In trying to avoid apprehension by the police plaintiff drove his car at a reckless rate of speed through the residential area.

Plaintiff is not personally or professionally acquainted with any of the individuals involved in the incident and he asserts that he has no recollection of his actions. He stated that he had had approximately seven drinks during the prior evening, at a stressful business meeting. A possible explanation for plaintiff's claimed inability to remember was offered by Robert Douglass, M.D., who stated that transient global amnesia, secondary to a cardiac arrhythmia, may have been caused by a hypoglycemic phase of diabetes triggered by alcohol and stress. The hearing officer found that plaintiff did not know that his cardiac arrhythmia could result in amnesia and acts of this nature.

In her conclusions of law, the hearing officer held that plaintiff had committed acts of immoral conduct and that § 11(2)(h) of the act did not require that an intent to commit the acts be proved. The hearing officer then discussed an amendment to the act which was enacted after the alleged incident. Section 11(2) of the act as amended provides for discipline upon a finding

that the licensee was guilty of "unprofessional and dishonest conduct". Subsection (h) of that section defines this to include conduct "lacking in good moral character" and this term is in turn defined by the statute. Plaintiff was found to be a man of good moral character.

The board adopted the findings of fact and conclusions of law made by the hearing officer except the discussion of the "good moral character" amendment to the act, which the board found to be immaterial to the allegation of the complaint. Based on its finding that the plaintiff's conduct was within the language of the act as it existed at the time of the incident, the board ordered a 30-day suspension of plaintiff's license and a three-year period of probation during which plaintiff was ordered to follow a medical regimen related to his health problem.

In reviewing the board's order the circuit court held that the board was in error and struck all disciplinary action except the imposition of the medical regimen. The court held that the new "good moral character" standard should be applied at all times and that "[w]hile application of the old act by the Board may not be legally or statutorily or unconstitutionally incorrect, it is, in this Court's opinion, considering all of these matters, deemed to be an abuse of discretion by the Board pursuant to M.C.L.A. 24.306". The court declined to follow the "general rule" that the act in effect at the time of the alleged incident should be applied, MCL 8.4a; MSA 2.214, finding that it was the intent of the Public Health Code, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* which repealed and replaced the Medical Practice Act, to have the "good moral character" standard relate back.

MCL 8.4a; MSA 2.214 provides:

"The repeal of any statute or part thereof shall not have the effect to release or relinquish any penalty, forfeiture, or liability incurred under such statute or any part thereof, unless the repealing act shall so *expressly* provide, and such statute and part thereof shall be treated as still remaining in force for the purpose of instituting or sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability." (Emphasis added.)

We find no express enactment by the Legislature that would have justified the board's use of any statutory language other than that in effect when the incident herein was alleged to have occurred. We hold, therefore, that the board applied the correct legal standard. We consider next plaintiff's contention that the standard as applied is constitutionally infirm.

Plaintiff maintains that the act as it existed at the time of the alleged incident violated the Michigan due process clause because the act lacked clear and definite standards. Plaintiff asserts that the failure of the act to define "immoral conduct" rendered the act unconstitutionally vague.

Substantive due process requires the "existence of reasonably precise standards to be utilized by administrative agencies in the performance of delegated legislative tasks". *State Highway Comm v Vanderkloot*, 392 Mich 159, 170; 220 NW2d 416 (1974). The standards must be "as reasonably precise as the subject matter requires or permits". *Osius v St Clair Shores*, 344 Mich 693, 698; 75 NW2d 25 (1956). The purpose of this requirement is, as this Court has stated, "to ensure that individuals are not held responsible by the state for conduct they could not reasonably understand to

be proscribed". *State Board of Dentistry v Blumer,* 78 Mich App 679, 683; 261 NW2d 186 (1977). Further, "requiring reasonably clear guidelines for officials enforcing the laws prevents arbitrary and discriminatory enforcement". *Id.*

In *Blumer, supra,* the Court held that § 18(n) of the dentistry act, MCL 338.218(n); MSA 14.629(18)(n), which gave the dentistry board power to suspend or revoke a dentist's license "[f]or being guilty of dishonorable or unprofessional conduct in the practice of dentistry", lacked precision and was insufficient for the board's exercise of its powers. 78 Mich App 679, 685. In reaching its decision, the Court compared the dentistry act to the Medical Practice Act giving its approval of the Medical Practice Act in the form in which it was applied to the present case.

In 1938, the Michigan Supreme Court upheld language in the Medical Practice Act, as it then existed, which provided for the revocation or suspension of a physician's license upon a finding that the physician had placed "grossly improbable" statements in advertising. *Warnshuis v State Board of Registration in Medicine,* 285 Mich 699; 281 NW 410 (1938). The Court found the terms had a "definite and well-recognized meaning", and noted that it would be quite impossible for the statute to list specifically all of the statements which could be deemed "grossly improbable". 285 Mich 699, 704.

In the case at hand, plaintiff has challenged the precision of the term "immoral conduct". We find this to be a term which has a "definite and well-recognized meaning" and one which encompasses innumerable situations. Though the term does admit some leeway in the application of the stat-

ute, we find that this is well within the agency's valid exercise of discretion in applying the statute. See, *Coffman v State Board of Examiners in Optometry,* 331 Mich 582, 590; 50 NW2d 322 (1951).

The decision of the trial court is reversed and the order of the defendant Board of Medicine is reinstated. No costs, a public question being involved.