RUSSO v DEPARTMENT OF LICENSING AND REGULATION

Docket No. 57298. Submitted June 8, 1982, at Detroit.—Decided September 21, 1982.

The Board of Osteopathic Medicine and Surgery of the Department of Licensing and Regulation summarily suspended the license of Joseph J. Russo, D.O., upon the complaint of the Attorney General. *Russo obtained a preliminary injunction staying enforcement of the suspension pending a final order from the board.* A hearing examiner found that Russo had violated minimum standards of care in dispensing controlled substances. The board adopted the examiner's findings and revoked Russo's license. Russo sought review in Macomb Circuit Court, which affirmed, Kenneth N. Sanborn, J. Russo appeals, alleging several errors. *Held:*

1. Russo was not denied due process by the fact that both the investigative and adjudicative powers regarding license revocation reside in the Department of Licensing and Regulation. The two functions were performed by independent divisions of the department. Further, the rules of the department and provisions of the Administrative Procedures Act are designed to prevent the commingling of investigative and adjudicative functions.

2. The hearing examiner's finding that Russo failed to take adequate medical histories from undercover agents prior to dispensing controlled substances to them was supported by competent evidence.

3. The hearing examiner did not abuse her discretion in admitting testimony of an expert witness regarding the standard of care applicable to this case.

4. The statutory standards which Russo was found to have violated were as reasonably precise as the subject matter

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Administrative Law §§ 77, 86.
[2] 2 Am Jur 2d, Administrative Law § 683.
[3] 2 Am Jur 2d, Administrative Law §§ 686, 688.
   30 Am Jur 2d, Evidence § 1080.
[4] 2 Am Jur 2d, Administrative Law §§ 614, 621.
[5] 61 Am Jur 2d, Physicians and Surgeons §§ 33, 139.

requires or permits, and were sufficient to support the revocation of Russo's license.

5. There was sufficient evidence to support the finding that a civilian obtained large amounts of controlled substances from Russo's office with Russo's permission.

Affirmed.

1. ADMINISTRATIVE LAW — DUE PROCESS.

Due process is not necessarily violated by the combination of investigative and adjudicative roles in a single governmental agency.

2. ADMINISTRATIVE LAW — REVIEW — STANDARD OF REVIEW.

The standard of review of the factual determinations of an administrative agency or board is whether the decision is supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 24.306; MSA 3.560[206]).

3. EVIDENCE — SUBSTANTIAL EVIDENCE.

"Substantial evidence" is that evidence which a reasoning mind would accept as sufficient to support a conclusion; it consists of more than a mere scintilla of evidence but may be substantially less than a preponderance of the evidence.

4. ADMINISTRATIVE LAW — REVIEW — FINDINGS OF FACT.

Great deference is given to the findings of an administrative law judge or hearing examiner and his or her decision will be upheld so long as it is supported by substantial evidence on the whole record because, as the trier of fact, the administrative law judge or the hearing examiner had the opportunity to hear the testimony and view the witnesses.

5. CONTROLLED SUBSTANCES — PHYSICIANS AND SURGEONS — OSTEOPATHS.

The standards regarding the administration of drugs found in the former statute regulating the practice of osteopathic medicine were sufficiently precise to allow the Board of Osteopathic Medicine and Surgery to revoke a practitioner's license for violation of those standards (MCL 338.109[1], subds [m], [n]; MSA 14.579[1], subds [m], [n], now MCL 333.16221; MSA 14.15[16221]).

*Poe & Stanesa* (by *Myron F. Poe*), for petitioner.

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Max R. Hoffman, Jr.,* Assistant Attorney General, for respondent.

Before: J. H. Gillis, P.J., and Wahls and R. H. Bell,* JJ.

J. H. Gillis, P.J. Petitioner appeals as of right a circuit court order affirming the respondent's revocation of plaintiff's license to practice osteopathic medicine and surgery.

On July 13, 1978, the attorney general filed a complaint with the defendant Board of Osteopathic Medicine and Surgery (hereinafter the board) charging that petitioner, Joseph John Russo, had illegally dispensed controlled substances. On the day the complaint was filed, the board summarily suspended petitioner's license pending a hearing, based on a finding that the continued practice of osteopathic medicine by petitioner would constitute "a threat to the public health, safety and welfare which requires emergency action".[1]

Upon petitioner's petition in the Macomb County Circuit Court, the court issued a preliminary injunction staying enforcement of the summary suspension until such time as a final order was entered by the board.[2]

Hearings were held before an administrative law examiner. Following the hearings, the examiner issued recommended findings of fact and conclusions of law finding that petitioner had violated

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The summary suspension pending a hearing was issued pursuant to MCL 24.292; MSA 3.560(192) and 1979 AC, R 338.112.

[2] Although petitioner obtained a preliminary injunction, we note that his petition in the circuit court was contrary to 1979 AC, R 338.113(1), which requires a person whose license has been summarily suspended to petition the board to reconsider and dissolve the suspension prior to seeking judicial relief.

minimum standards of care in dispensing controlled substances in violation of former MCL 338.109(1), subds (m) and (n); MSA 14.579(1), subds (m) and (n).[3] By order of July 16, 1979, the board adopted the examiner's findings of fact and conclusions of law and ordered petitioner to surrender his license.

Petitioner then sought judicial review in the Macomb County Circuit Court. On March 11, 1981, the circuit court entered its opinion and order affirming the decision of the board. Petitioner appeals.

Petitioner first argues that he was denied a fair hearing under Const 1963, art 1, § 17, because the accusatory, investigative and adjudicative powers in license revocation matters all reside in the same governmental agency, namely, the Department of Licensing and Regulation (hereinafter the department). Additionally, petitioner asserts that the board's issuance of an *ex parte* summary suspension reversibly tainted its ultimate decision in the case. Petitioner's second argument, which is closely related to the first, asserts that §§ 71 through 92 of the Administrative Procedures Act (APA), MCL 24.271-24.292; MSA 3.560(171)-

---

[3] MCL 338.109; MSA 14.579 was repealed by 1978 PA 368, § 25101, eff September 30, 1978. See, now, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* specifically MCL 333.16221; MSA 14.15(16221). MCL 338.109(1), subds (m) and (n); MSA 14.579(1), subds (m) and (n) provided:

"(1) The board may revoke or suspend a license under this act for a limited period or place on probation or reprimand a licensee, or refuse to register or reinstate a licensee for any of the following causes:

*    *    *

"(m) Failure to use reasonable care and discrimination in the administration of drugs and failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease.

"(n) Selling, prescribing, giving away, or administering drugs for other than legal and legitimate therapeutic purposes."

3.560(192), are unconstitutional because they require that the hearing on the charges against the petitioner be conducted before the same "agency" which investigated the case and summarily suspended petitioner's license.

We disagree with petitioner's arguments, primarily because they ignore the fact that the investigative and adjudicative functions were performed by separate and independent divisions of the department.

It is well established that combining the investigative and adjudicative roles in a single governmental agency does not necessarily violate due process. *In the Matter of Del Rio,* 400 Mich 665, 690; 256 NW2d 727 (1977), *app dis* 434 US 1029; 98 S Ct 759; 54 L Ed 2d 777 (1978); *Automotive Service Councils of Michigan v Secretary of State,* 82 Mich App 574, 586; 267 NW2d 698 (1978), *lv den* 403 Mich 810 (1978), *app dis* 439 US 973; 99 S Ct 554; 58 L Ed 2d 645 (1978).

The complaint in this matter was filed by the attorney general pursuant to 1979 AC, R 338.114(2). The complaint was based on the results of an investigation performed by undercover drug investigators employed by (or in cooperation with) the Diversion Investigation Unit, which is an arm of the Department of Licensing and Regulation. The board, which is another independent arm of the department, then issued a summary suspension based on the complaint and affidavits submitted by persons familiar with the facts. See 1979 AC, R 338.112.[4] Full hearings were subsequently

[4] 1979 AC, R 338.112 provides:

"(1) The attorney general or his designated assistant may request the board to summarily suspend a license when the public health, safety, or welfare requires emergency action.

"(2) After an investigation has been conducted, the board may issue an ex parte order summarily suspending a license based upon an

held before the administrative law examiner, whose recommendations were then adopted by the board.

We find no indication in the record that the board accused or investigated the charges against petitioner. Indeed, the rules promulgated by the department contain provisions designed to prevent the commingling of the accusatory, investigative and adjudicative functions. For example, 1979 AC, R 338.111 provides:

"The board or its authorized representative may authorize investigations and may issue complaints for apparent violations of the act. *Any member of the board who takes an active part in the investigatory or accusatory process shall not participate in deciding the contested case unless necessary to assure the availability of the forum, in which event disclosure of the member's participation in the investigatory or accusatory process shall be made on the record.*" (Emphasis supplied.)

Moreover, 1979 AC, R 338.112, which authorizes the board to issue an *ex parte* order summarily suspending a license pending a hearing, contains the following protection:

"The taking of emergency action shall not affect the impartiality of the board in its receipt and consideration of the evidence."

The APA, § 82, MCL 24.282; MSA 3.560(182), also provides protection against an agency's com-

---

affidavit by a person familiar with the facts set forth therein or, when appropriate, based upon an affidavit on information and belief. Thereafter, contested proceedings shall be promptly commenced and decided.

"(3) The taking of emergency action shall not affect the impartiality of the board in its receipt and consideration of the evidence."

mingling of investigative and adjudicative functions. Section 82 provides in pertinent part:

"Unless required for disposition of an ex parte matter authorized by law, a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except on notice and opportunity for all parties to participate. This prohibition begins at the time of the notice of hearing. *An agency member may communicate with other members of the agency and may have the aid and advice of the agency staff other than the staff which has been or is engaged in investigating or prosecuting functions in connection with the case under consideration* or a factually related case." (Emphasis supplied.)

We also observe that the APA provides a procedure whereby a party who has reason to believe that the adjudicating officer's impartiality has been tainted can move for disqualification. MCL 24.279; MSA 3.560(179). Petitioner did not invoke the disqualification procedure in this case.

Based upon our review of the record and briefs, we conclude that petitioner has failed to carry his burden of proving that the board was involved in the accusatory or investigative stages of this case. We conclude that petitioner was not denied a fair hearing and that APA sections 71 through 92 are not unconstitutional.

The next issue raised by petitioner is whether the administrative law examiner's findings of fact, which were adopted by the board, were supported by competent evidence.

The standard to be applied in reviewing the factual determinations of an administrative

agency or board is whether the decision is supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 24.306; MSA 3.560(206). The "substantial evidence test" has been defined as evidence which a reasoning mind would accept as sufficient to support a conclusion. While it consists of more than a mere scintilla of evidence it may be substantially less than a preponderance of the evidence. *Soto v Director, Dep't of Social Services,* 73 Mich App 263, 271; 251 NW2d 292 (1977), citing *Ginsburg v Richardson,* 436 F2d 1146 (CA 3, 1971), *cert den* 402 US 976; 91 S Ct 1680; 29 L Ed 2d 142 (1971), *reh den* 403 US 912; 91 S Ct 2213; 29 L Ed 2d 690 (1971); *Tompkins v Dep't of Social Services,* 97 Mich App 218, 222; 293 NW2d 771 (1980). Great deference is given to findings of an administrative law judge. *Viculin v Dep't of Civil Service,* 386 Mich 375, 406; 192 NW2d 449 (1971); *Tompkins, supra.* Since the administrative law judge, as the trier of fact, has the opportunity to hear the testimony and view the witnesses, his or her decision will be upheld so long as it is supported by substantial evidence on the whole record. *Tompkins, supra,* 223.

With respect to petitioner's first challenge to the examiner's findings, we find that the testimony of undercover investigators Philip Maddox and David Ruiz supports the examiner's conclusion that petitioner failed to take adequate medical histories of the men prior to dispensing controlled substances to them.

Petitioner next argues that certain medical records admitted at the hearing were improperly obtained from petitioner's office in that they were outside the scope of a federal administrative inspection warrant. Because our review of the record

convinces us that the examiner's findings and conclusions are adequately supported by testimony independent of the medical records, we find it unnecessary to consider this assignment of error.

Petitioner next maintains that the examiner abused her discretion in admitting the testimony of Dr. Griffin, an expert witness who testified concerning the standard of care in dispensing the controlled substances herein involved. Petitioner essentially argues that Dr. Griffin was unaware of the applicable standard of care and therefore did not qualify as an expert witness. Applying the standard set forth in *Callahan v William Beaumont Hospital,* 400 Mich 177; 254 NW2d 31 (1977), we find that the examiner did not abuse her discretion in admitting the testimony of Dr. Griffin. See also *Haisenleder v Reeder,* 114 Mich App 258; 318 NW2d 634 (1982); *LeBlanc v Lentini,* 82 Mich App 5; 266 NW2d 643 (1978), *lv den* 403 Mich 807 (1978).

In a related argument, petitioner asserts that the lack of promulgated standards for dispensing and prescribing amphetamines is fatal to respondent's case, citing *State Board of Dentistry v Blumer,* 78 Mich App 679; 261 NW2d 186 (1977). We believe the holding in *Blumer* is clearly inapplicable to the present case. In *Blumer,* this Court held that the revocation of defendant Blumer's license based on the standards of "dishonorable" and "unprofessional" violated defendant's due process. The Court found that such standards failed to apprise licensees of the conduct proscribed and gave the board nearly unlimited discretion in determining the type of conduct which would result in revocation.

In contrast, petitioner in the instant case was found to have violated specific statutory standards

set forth in MCL 338.109(1), subds (m) and (n); MSA 14.579(1), subds (m) and (n). We find that the statutory standards here involved are "as reasonably precise as the subject matter requires or permits". See *Blumer, supra,* 682; *Krohn v Board of Medicine,* 98 Mich App 129, 133; 296 NW2d 57 (1980).

Petitioner next challenges the examiner's finding that a civilian, Daniel G. Gilchrist, obtained large amounts of controlled substances from petitioner's office with petitioner's permission. There was evidence that Gilchrist was a patient of petitioner and that on two occasions, Gilchrist was observed by investigators entering and exiting from petitioner's offices. On each occasion, Gilchrist carried a suitcase which appeared to the investigators to be heavier upon exiting from the office than when entering. The suitcase was seized by investigators and found to contain some 38,500 units of schedule 2 controlled substances. The examiner's conclusion that the drugs were obtained from petitioner with petitioner's permission satisfies the substantial evidence test.

As to petitioner's final argument, we hold that the decision of the examiner adopted by the board was in complete compliance with APA § 85; MCL 24.285; MSA 3.560(185).

Affirmed.