SAFRAN PRINTING COMPANY v CITY OF DETROIT

Docket Nos. 77-2799, 77-2800, 77-2801. Submitted November 2, 1978, at Lansing.—Decided February 5, 1979. Leave to appeal applied for.

Safran Printing Company appealed to the Tax Tribunal the valuations placed upon its printing plant, office and warehouse by the City of Detroit for purposes of assessing property taxes. The Tax Tribunal made a determination of true cash value of the property and Safran appeals, alleging that the tribunal applied an improper standard in calculating the property's value for taxation purposes. *Held:*

1. True cash value for taxation purposes is synonymous with fair market value, and is the usual selling price which could be obtained for the property at a private sale. The tribunal improperly considered the market value as only a guideline for determining valuation; fair market value is the standard to be used, not merely a guideline.

2. The tribunal also apparently gave much weight to the use which was being made of the property. While existing use may normally be indicative of the use to which a buyer would put the property, in this case the property was ill-suited to its use as a printing plant. Both parties agreed that if it were to be sold, the property would most likely be sold as a warehouse. Therefore, the existing use bore no relationship to the price a likely buyer would pay for the property.

3. The tribunal improperly characterized the property as unique. Merely because property is put to an unusual use does not render it unique for purposes of property taxes.

Remanded.

1. APPEAL AND ERROR — TAXATION — APPEAL FROM TAX TRIBUNAL — CONSTITUTIONAL LAW.

Appellate review of decisions of the Tax Tribunal is limited by

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 702, 820.

72 Am Jur 2d, State and Local Taxation § 787.

[2-4, 6] 72 Am Jur 2d, State and Local Taxation §§ 753, 754, 759.

[5] 72 Am Jur 2d, State and Local Taxation §§ 753-756.

[7] 72 Am Jur 2d, State and Local Taxation § 759.

the constitution to cases involving fraud, error of law, or the adoption of wrong principles (Const 1963, art 6, § 28).

2. TAXATION — PROPERTY TAXES — TRUE CASH VALUE — FAIR MARKET VALUE — STATUTES.

Property is to be assessed according to its true cash value, which is defined by statute as the usual selling price at the place where the property is located, the price which could be obtained for the property at private sale, and not at forced or auction sale; the concept of true cash value is synonymous with fair market value (MCL 211.27; MSA 7.27).

3. TAXATION — PROPERTY TAXES — FAIR MARKET VALUE — TRUE CASH VALUE — METHOD OF CALCULATION.

Any method of calculating true cash value of property that is recognized as accurate and is reasonably related to fair market value is an acceptable indicator of true cash value.

4. TAXATION — PROPERTY TAXES — TAX TRIBUNAL — STANDARD FOR DETERMINATION — FAIR MARKET VALUE.

The Tax Tribunal applied an improper standard to determine the value of a printing plant where the tribunal stated that the market value of the property was merely a guideline for determination of value; fair market value is the standard for determination, not merely a guideline.

5. TAXATION — PROPERTY TAXES — FAIR MARKET VALUE — GUIDELINES — STATUTES.

The factors that are to be used as guidelines in an attempt to determine the fair market value of property for taxation purposes are those set forth by statute (MCL 211.27; MSA 7.27).

6. TAXATION — PROPERTY TAXES — USE — FAIR MARKET VALUE.

The existing use of property normally may be indicative of the use to which a potential buyer would put the property and is, therefore, relevant to the property's fair market value; however, where the property is so ill-suited to its use that that use bears no relationship to what a likely buyer would pay for the property, reliance by the Tax Tribunal on the existing use in determining the property's valuation is erroneous.

7. TAXATION — PROPERTY TAXES — UNIQUE PROPERTY — USE.

Merely because property is put to an unusual use does not render it unique for purposes of property taxes; attributing value to the property over what it could command in the market place due to its use by the owner imposes a "use tax", not an ad valorem property tax.

*Honigman, Miller, Schwartz & Cohn* (by *Charles H. Tobias* and *Michael B. Shapiro),* for plaintiff.

*Roger E. Craig,* Corporation Counsel, *George G. Matish,* Deputy Corporation Counsel, and *Carl Rashid, Jr.,* Assistant Corporation Counsel, for defendant.

Before: M. J. KELLY, P.J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

J. H. GILLIS, J. Plaintiff, Safran Printing Company, appeals from a split decision of the Michigan Tax Tribunal fixing the valuation and assessment of two pieces of property in the City of Detroit, hereinafter referred to as the "main plant" and the "associated property".

The main plant consists of a 7.41-acre parcel of land with a 191,000-square-foot structure owned by Safran and used by it as a printing plant. The valuation and assessment of this property is in dispute for the years 1971 through 1976. The tribunal majority found the true cash value of this property to be $767,770. Appellant contends it should be $368,000.

The associated property consists of a warehouse and two-story office building on 1.95 acres. This was purchased by Safran in 1973 for $130,000. The valuation and assessment of this property is in dispute for the years 1973 through 1976. The majority found the true cash value to be $208,000. Appellant contends it should be $135,000.

In a well written dissent, tribunal member McDonald concluded that appellant's figures correctly reflected the true cash value of the parcels in question. We find the dissenting opinion accurately states the law on this subject and adopt its reasoning.

Appellate review of decisions of the Tax Tribunal is limited by Const 1963, art 6, § 28, which provides:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

Safran contends the tribunal majority used an improper standard to determine the true cash value of the property. For purposes of taxation, property is to be assessed according to its true cash value. Const 1963, art 9, § 3. *Ramblewood Associates v Wyoming,* 82 Mich App 342; 266 NW2d 817 (1978). The Legislature has defined "cash value" as:

"*[T]he usual selling price at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale.* * * * In determining the value the assessor shall also consider the advantages and disadvantages of location, quality of soil, zoning, existing use, present economic income of structures, including farm structures and present economic income of land when the land is being farmed or otherwise put to income producing use, quantity and value of standing timber, water power and privileges, mines, minerals, quarries, or other valuable deposits known to be available therein and their value." MCL 211.27; MSA 7.27. (Emphasis supplied.)

The Supreme Court has recognized that under this definition the concept of "true cash value" is synonymous with "fair market value". *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974).

There are a number of methods generally accepted for calculating true cash value. Any method which is recognized as accurate and is reasonably related to fair market valuation is an acceptable indicator of true cash value. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 130; 265 NW2d 182 (1978), *Ramblewood Associates v Wyoming, supra.*

In assessing the property under consideration the majority stated the following:

"The Tribunal in making its analysis of the proper true cash value of the main parcel, disagrees with the Petitioner's approach to valuation in that the Petitioner relies on a market value for the property based on a future or alternative use while ignoring its present existing use as an industrial printing plant which we believe to be the highest and best use.

\* \* \*

"The legislative definition of true cash value is not exclusive or inclusive. The tax laws must be read as a whole. 'The usual selling price' *or market value of property is merely a guide for the determination of property valuations. Moran v Grosse Pointe Twp,* 317 Mich 248; 26 NW2d 763 (1947). As stated, in MCL 211.27; MSA 7.27, when determining value the assessor shall also consider the existing use of the property in question. However, no single factor is intended to be inclusive as to value. Basically, all related factors are to be considered. While it may seem that a sale definitely fixes market price so as to almost indisputably determine true cash value, this is not necessarily the case, particularly if the property is unique, as the subject is, and if there have been few sales in like property. *Fisher New Center v State Tax Comm,* 381 Mich 713; 167 NW2d 263 (1969)." (Emphasis supplied.)

The foregoing excerpt indicates the tribunal applied an improper standard to determine the

value of the property in question. "Fair market value" *is* the standard and not merely a guideline.

In holding otherwise, the tribunal misconstrued the Supreme Court's opinion in *Moran v Grosse Pointe Twp, supra.* That case indicates that a single sale is not conclusive of true cash value. The entire paragraph, from which the tribunal took a single clause, reads as follows:

"The words 'cash value' as defined by 1 Comp Laws 1929, § 3415 (Stat Ann § 7.27) is the usual selling price that could be obtained for it at the time of assessment, but not the price obtainable at a forced or auction sale. As stated in *Twenty-Two Charlotte, Inc v Detroit,* 294 Mich 275, 283 [293 NW 647 (1940)]:

" 'Where property is singular in character and sales are separated by many years, there is no usual selling price in the sense the expression is used to describe the focus of buyers and sellers of commodities actively exchanged in an open market. Nor did the Legislature intend that a single event be conclusive. In the valuation problem the assessing officers had to resolve in the instant case, the test of the *"usual selling price" is merely a guide* for determination; under the circumstances before us the definition provides a standard for a hypothetical or fictitious market. It was the duty of the assessors to consider the factors which motivate buyers and sellers to exchange their interests *(Olson v United States,* 292 US 246 [54 S Ct 704; 78 L Ed 1236]), and to exercise their judgment in an honest effort to determine at what point the inertia to trade is overcome.' " (Emphasis supplied.) *Moran v Grosse Pointe Twp, supra,* at 254-255.

It is evident from the context that by "usual selling price" the Court was referring to a single sale that had occurred in that case. The last sentence of the paragraph indicates that the goal of the assessors is to determine "at what point the

inertia to trade is overcome", or, in other words, the "fair market value".

The fair market value of real property, unlike stocks traded on a national exchange, is often difficult to determine. It is for this reason the Legislature set forth a list of factors to be considered, such as location, zoning, existing use, etc. MCL 211.27; MSA 7.27. It is these factors that are to be used as guidelines in an attempt to determine the fair market value of a piece of property.

In the instant case the tribunal apparently attributed great weight to the fact that the subject property was being used as a printing plant, stating that this was the highest and best use of the property. Normally, existing use may be indicative of the use to which a potential buyer would put the property and is, therefore, relevant to the fair market value of the property. However, in this case it is undisputed that the property is obsolete, inefficient, and could not be sold as a printing plant. Only the prohibitive cost prevents Safran from relocating. It is evident, therefore, that under the facts of this case the existing use of the property bears no relationship to what a likely buyer would be willing to pay for it.

Experts for both parties agreed that if sold, the property would most likely be sold as a warehouse. The fact that Safran does not intend to sell is of no relevance for it is the duty of the tribunal to hypothesize the highest probable price at which a sale would take place.

By expressly rejecting the usual selling price or fair market value standard and attributing a significant amount of value to the existing use of the property where such use bears no relationship to what a likely buyer would pay for the property, the tribunal used a wrong principle of evaluation.

The majority defends its position by characterizing the property as unique. It appears that the only thing particularly unique about the property is the fact that it is used as a printing plant despite being ill-suited for that purpose. In *Moran v Grosse Pointe Twp, supra,* the property in question consisted of an elaborate home on Windmill Pointe abutting Lake St. Clair. *Fisher New Center Co v State Tax Comm (On Rehearing),* 381 Mich 713; 167 NW2d 263 (1969), was concerned with a major office complex in the City of Detroit. In both of these cases it was the physical attributes of these properties which made them unique.

Merely because property is put to an unusual use does not render it unique for purposes of property taxes. While the main plant in the instant case has some unusual features, the majority tribunal opinion fails to specify any physical factors which distinguish it from numerous other buildings in the area used as warehouses.

As the dissenting tribunal opinion points out, attributing value to the property over what it could command in the market place due to its use by the owner imposes a "use tax", not an ad valorem property tax.

The case is remanded for a determination of the price the property would most likely bring if it were put upon the market. This is the "true cash value". No costs, a public question being involved.