DOW CHEMICAL COMPANY v DEPARTMENT OF TREASURY

Docket No. 117858. Submitted May 10, 1990, at Lansing. Decided September 12, 1990.

In 1982, Dow Chemical Company, after negotiations with Apache Corporation, entered into a partnership agreement with Apache Petroleum Company, a limited partnership of which Apache Corporation is the general partner. The agreement also provided that, in exchange for Dow's transfer of its oil and gas division to Apache Petroleum Company, Dow would receive $79,425,976 and ten million units of Apache Petroleum Company and Apache Petroleum Company would assume $150,000,000 of Dow's debts. On its 1982 federal income tax return, Dow reported the sale of an undivided portion of its oil and gas division for $79,425,976 and treated the remainder of the transaction as a transfer to a partnership not subject to capital gains recognition. In its 1982 Michigan single business tax return, Dow showed no recapture of the capital acquisition deduction it had taken with respect to the oil and gas division. The Michigan Department of Treasury subsequently audited Dow's single business tax return for 1982 and concluded that full recapture of the capital acquisition deduction resulted from the transfer of the oil and gas division, resulting in a tax liability of $50,473,840 before apportionment. Dow petitioned for review. The referee, following a hearing, determined that Dow had sold the oil and gas division to the partnership and was thus subject to recapture of the capital acquisition deduction. Dow petitioned for review by the Tax Tribunal, which affirmed. Dow appealed.

The Court of Appeals *held*:

1. Under the Michigan Single Business Tax Act liability for recapture of a capital acquisition deduction upon the transfer of the subject property is determined by whether the transfer would require recognition of a capital gain or loss under the federal Internal Revenue Code.

2. Under the Internal Revenue Code transfer of property to a

REFERENCES

Am Jur 2d, State and Local Taxation §§ 554, 555.
See the Index to Annotations under Capital Gain or Loss; Taxes.

partnership when coupled with a transfer of money or property by the partnership back to such partner is treated as a sale and is thus subject to capital gains recognition. The referee and the Tax Tribunal properly found that the entire transaction amounted to a sale of the oil and gas division to the partnership and thus the entire transaction, including the transfer of partnership units and the assumption of Dow's debts, was subject to the capital acquisition deduction recapture provision. Affirmed.

1. Taxation — Single Business Tax — Capital Acquisition Deduction — Transfers of Property — Capital Gains.

Whether there is a recapture of a capital acquisition deduction under the Michigan Single Business Tax Act upon the transfer of a property for which a capital acquisition deduction had previously been taken is determined by whether the transfer is a situation in which a capital gain or loss is recognized under the federal Internal Revenue Code (MCL 208.23[b]; MSA 7.588[23][b]).

2. Taxation — Partnerships — Transfers of Property — Capital Gains.

The direct or indirect transfer of money or other property by a partner to a partnership when coupled with a related direct or indirect transfer of money or other property by the partnership to such partner is properly characterized for federal income tax purposes as a sale or exchange of property upon which a capital gain or loss must be recognized (26 USC 707).

*David Brady,* for petitioner.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistant Attorneys General, for respondent.

Before: Gribbs, P.J., and Hood and T. J. Lesinski,* JJ.

Per Curiam. Petitioner, Dow Chemical Company, appeals as of right from the May 23, 1989, opinion and judgment of the Michigan Tax Tribu-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

nal affirming the single business tax liability assessed against Dow by respondent, Michigan Department of Treasury. The liability arose out of the department's finding that Dow's transfer of its oil and gas division constituted a sale requiring recapture of a capital acquisition deduction pursuant to MCL 208.23(b); MSA 7.558(23)(b). We affirm.

The facts of this case are undisputed. Dow, a Delaware corporation with its principal place of business in Midland, Michigan, is the parent corporation of an affiliated group of corporations conducting business throughout the world. Dow's primary business operations include the manufacture and sale of organic and inorganic chemicals. Dow's hydrocarbon department is responsible for the acquisition of hydrocarbon raw materials (natural gas, naptha, petroleum and liquid petroleum gas) for United States manufacturing sites.

Prior to 1982, Dow's hydrocarbon department included an oil and gas division. This division provided approximately twenty-five percent of Dow's hydrocarbon raw materials. Dow acquired the majority of its raw materials from third-party suppliers.

In early 1982, Dow's management decided to dispose of its oil and gas division and rely solely on third-party suppliers for hydrocarbon raw materials. Later that year, Dow commenced discussions with Apache Corporation (Apache) for sale of the oil and gas division to Apache Petroleum Company (APC), a limited partnership. Apache is the general partner in APC.

Dow and Apache's negotiations concluded in September, 1982. As a result, Dow and APC executed an acquisition, exchange and partnership formation agreement on September 30, 1982. The agreement provided that in exchange for Dow transferring its oil and gas division to APC Dow

received: (1) $79,425,976; (2) ten million units (certificate of interest) of APC worth $18.90 per unit; and (3) APC's assumption of $150,000,000 of Dow's debts.

Dow reported the transaction with APC on its 1982 federal income tax return. Dow reported that it had sold an undivided portion of its oil and gas division assets to APC for $79,425,976. Dow treated the remainder of the transaction as a transfer to a partnership under § 721 of the Internal Revenue Code, 26 USC 721. Furthermore, on its 1982 Michigan single business tax return, Dow showed no recapture of a capital acquisition deduction resulting from the transaction with APC.

Subsequently, the Michigan Department of Treasury audited Dow's single business tax return. The department concluded that the APC transaction was an event requiring full recapture of a capital acquisition deduction resulting in a $50,473,840 tax liability (before apportionment to Michigan) against Dow. Dow conceded that liability for nineteen percent of this amount was proper, as it represented the cash payment Dow received. However, Dow took issue with the remainder of the amount.

After completion of the audit, Dow petitioned the Michigan Department of Treasury for administrative review of the question whether Dow's transfer of its oil and gas division to APC constituted a "sale" requiring recapture of a capital acquisition deduction under MCL 208.23(b); MSA 7.558(23)(b).

Following a hearing before a referee, the Department of Treasury issued its decision and order of determination on October 10, 1986. The decision and order concluded that Dow had "sold" its oil and gas division to APC, necessitating recapture. The department then issued a Notice of Final

Assessment as to the $50,473,840 tax liability against Dow.

On November 16, 1986, Dow filed a petition with the Michigan Tax Tribunal requesting review of the Department of Treasury's decision. On May 23, 1989, the Tax Tribunal issued its opinion and judgment, ruling that there was a single transaction between Dow and APC in which Dow "sold" its oil and gas division to APC. The Tax Tribunal affirmed the Department of Treasury's decision.

On appeal, Dow does not dispute that the $79,425,976 cash payment for the oil and gas division required recapture of a capital asset deduction. Thus, Dow agrees that a *portion* of the transaction was a sale or other disposition requiring recapture. However, Dow contends that the remaining consideration it received from APC (10,000,000 units of APC and APC's assumption of $150,000,000 of debt) was not a sale or other disposition. Rather, Dow argues that the remaining consideration constituted a transfer in exchange for a partnership interest under § 721 of the Internal Revenue Code, 26 USC 721. Dow claims that no gain or loss is recognized and, therefore, recapture does not occur. In essence, Dow asserts that there were two transactions with respect to transfer of its oil and gas division: (1) a sale, and (2) a contribution in exchange for a partnership interest.

The Tax Tribunal disagreed with Dow's characterization and found that only one transaction occurred, which was a sale requiring recapture of a capital acquisition deduction.

This Court's review of Tax Tribunal decisions, in the absence of fraud, is limited to whether the tribunal made an error of law or adopted a wrong principle. We accept the factual findings of the tribunal as final, provided they are supported by

competent, material, and substantial evidence. Const 1963, art 6, § 28; *Antisdale v City of Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984); *Fisher v Sunfield Twp,* 163 Mich App 735, 741; 415 NW2d 297 (1987). Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence required in most civil cases. *Russo v Dep't of Licensing & Regulation,* 119 Mich App 624, 631; 326 NW2d 583 (1982). The burden of proof in an appeal from an assessment, decision, or order of the Tax Tribunal is on the appellant. *Holloway Sand & Gravel Co, Inc v Dep't of Treasury,* 152 Mich App 823, 831, n 2; 393 NW2d 921 (1986).

Under the Michigan Single Business Tax Act, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.,* taxpayers are allowed to recover the cost of certain tangible assets in the year of acquisition. The recovery is accomplished by taking what is known as a capital acquisition deduction. However, when an asset is sold or otherwise disposed of, the taxpayer must recapture (pay back) that portion of the capital acquisition deduction that has not been economically exhausted.

The recapture of a capital acquisition deduction is specifically provided for in § 23(b) of Michigan's Single Business Tax Act, MCL 208.23(b); MSA 7.558(23)(b), which states:

> After allocation as provided in section 40 or apportionment as provided in section 41, the tax base shall be adjusted by the following:
>
> *   *   *
>
> (b) Add the gross proceeds or benefit derived from the sale or other disposition of the tangible assets defined in subdivision (a) minus the gain and plus the loss from the sale reflected in federal

taxable income and minus the gain from the sale or other disposition added to the tax base in section 9(6). This addition shall be multiplied by a fraction, the numerator of which is the payroll factor plus the property factor and the denominator of which is 2. As used in this subdivision, "sale or other disposition" shall not include the transfer of tangible assets that are leased back to the transferor under section 168(f)(8) of the internal revenue code.

The formula contained in this section effectuates recapture in situations where a "sale or other disposition" is taxable at the federal level. The formula does not provide for recapture in "nonrecognition dispositions," which are situations in which gain or loss is not recognized under federal income tax law. An example of such a situation is a transaction involving contributions to partnerships.

While MCL 208.23(b); MSA 7.558(23)(b) does not address the question of recapture and contributions to partnerships, we are given some guidance by the Michigan Department of Treasury in its Tax Bulletin 1981-Z. In this publication, the department has indicated that certain transfers of property, for single business tax purposes, do not cause recapture of a capital acquisition deduction by the transferor. The department, utilizing federal income tax law, listed one such transfer as:

> Contribution to a partnership. The transfer of property where no gain or loss is recognized under IRC Section 721.

The issue involved in the instant case concerns whether that portion of Dow's transfer of its oil and gas division to APC in which Dow received 10,000,000 units of APC and assumption of

$150,000,000 of its debt in exchange constituted contribution to a partnership within the context of § 721 of the Internal Revenue Code, thereby eliminating recapture, or whether the *entire* transaction constituted a sale outside the scope of § 721 thus requiring recapture.

In order to address this issue we must first review the language of § 721, which states in relevant part:

> (a) General rule—No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.

The Internal Revenue Division of the United States Department of Treasury interpreted the above cited rule in CFR 1.721-1(a), stating:

> Section 721 [of the Internal Revenue Code] shall not apply to a transaction between a partnership and a partner not acting in his capacity as a partner since such a transaction is governed by section 707. Rather than contributing property to a partnership, a partner may sell property to the partnership or may retain the ownership of property and allow the partnership to use it. *In all cases, the substance of the transaction will govern, rather than its form.* See paragraph (c)(3) of § 1.731-1. *Thus, if the transfer of property by the partner to the partnership results in the receipt by the partner of money or other consideration, including a promissory obligation fixed in amount and time for payment, the transaction will be treated as a sale or exchange under section 707 rather than as a contribution under section 721.* [Emphasis added].

Section 707 of the Internal Revenue Code, 26 USC 707, provides in pertinent part:

(a) Partner not acting in capacity as partner.

(1) In general. If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

* * *

(A) Treatment of certain property transfers. If—
(i) there is direct or indirect transfer of money or other property by a partner to a partnership,
(ii) there is a related direct or indirect transfer of money or other property by the partnership to such partner (or another partner), and
(iii) the transfers described in clauses (i) and (ii) when viewed together are properly characterized as a sale or exchange of property, such transfers shall be treated either as a transaction described in paragraph (1) or as a transaction between 2 or more partners acting other than in their capacity as members of the partnership.

A review of legislative history lends insight into the purpose for distinguishing contributions to partnerships from sales. We believe that such information will help us characterize the transaction between Dow and APC.

In 1984, a United State House of Representatives conference report was prepared on the Deficit Reduction Act of 1984 (PL 98-369). The Act amended certain sections of the Internal Revenue Code. The Act specifically amended § 707 and the conference report on the amendment contained the following discussion on disguised sales:

The bill [§ 707] provides that, when a partner transfers money or other property to a partnership and there is a related direct or indirect transfer of money or other property to that partner or other partner, the transaction is to be treated (as appro-

priate) as a sale between the partners of property (including partnership interests) or as a partial sale and partial contribution of the property to the partnership. The selling partner will be required to recognize gain (or loss) on all or part of the amount received in the transaction. This rule is intended to prevent the parties from characterizing a sale or exchange of property as a contribution to the partnership followed by a distribution from the partnership thereby deferring or avoiding tax on the transaction.

To accomplish this, the bill authorizes the Treasury Department to prescribe such regulations as may be necessary or appropriate to carry out the purpose of this provision. In prescribing these regulations, the Treasury should be mindful that the committee is concerned with transactions that attempt to disguise a sale of property and not with non-abusive transactions that reflect the various economic contributions of the partners. [HR Rep No. 98-432, part II, reprinted in 1984 US Code Cong and Adm News, vol 3, p 886.]

The above statements lead us to the initial conclusion that a transaction between a partner and partnership can be viewed as multiple events. The conference report clearly states that a transfer of property can be viewed as a partial sale and a partial contribution to a partnership. Therefore, as a reviewing court, we must take a piecemeal approach and look individually at each element of the consideration Dow received and characterize each element as either a sale or contribution. In doing so, we conclude that Dow is correct in its assertion the transaction with APC can be viewed as a series of separate transactions.

The first event of the transaction was APC's payment of cash to Dow. Dow concedes and we agree that the portion of the transaction in which Dow received $79,425,976 for transfer of its oil and gas division constituted a transfer of property by

Dow for which Dow received money, and thus, constituted a sale under § 707 rather than a contribution under § 721. Consequently, pursuant to MCL 208.23(b); MSA 7.558(23)(b), recapture is required.

The second event involved in the transaction encompasses APC's assumption of $150,000,000 of Dow's debt. The United States Department of Treasury, in interpreting § 721 in CRF 1.721-1(a) specifically stated that, if the transfer of property by the partner to the partnership results in the receipt by the partner of money *or other consideration,* then the transaction will be treated as a sale under § 707. We believe that relief from debt constitutes "other consideration," since consideration can be defined as a right, interest, profit, or benefit accruing to one party, or some loss or responsibility suffered or undertaken by the other. 6A Michigan Law & Practice, Contracts, § 51, p 113. In this case, Dow received the benefit of relief from a portion of its debt, while APC undertook the responsibility for this debt. Therefore, Dow received consideration for its transfer of the oil and gas division. Therefore, we feel that the portion of the transaction involving the $150,000,000 debt assumption was not a contribution under § 721 but rather a sale under § 707, requiring recapture pursuant to MCL 208.23(b); MSA 7.558(23)(b).

The third and final event in the transaction involves Dow's receipt of 10,000,000 units of APC. This event presents some difficulty because of the nature of the consideration.

Under § 721, no gain or loss shall be recognized when a partner contributes property to a partnership in exchange for an interest in the partnership. Viewing this language literally, it would at first glance appear that the transaction with respect to the 10,000,000 units would constitute a

contribution to the partnership, since Dow was given certificates of interest in the partnership in exchange. However, as previously noted, the United States Department of Treasury has stated that the substance of the transaction rather than the form will govern. CFR 1.721-1(a). In addition, Congress, in enacting § 707, was concerned with preventing parties from disguising the sale of property as a contribution to a partnership. In keeping these two factors in mind, we believe that, while Dow received interest in APC as part of the oil and gas division, the substance of the transaction was a sale.

Dow and APC were not partners prior to the transaction. As a factual matter, Dow and APC executed a partnership formation agreement simultaneous to consummating the acquisition of the oil and gas division. While this by no means constitutes conclusive evidence of Dow and APC's intention, we believe that it at least casts some doubt on Dow's argument that the transaction, insofar as the 10,000,000 units of APC are concerned, constituted a contribution to the partnership. It would appear to us that Dow and APC, in simultaneously forming the partnership, were attempting to disguise the sale as a contribution to the partnership under § 721.

Further support for this conclusion can be found in the United States Tax Court's decision in *Otey v Comm'r of Internal Revenue,* 70 TC 312 (1978), aff'd 634 F2d 1046 (CA 6, 1980). In *Otey,* the partner transferred property to the partnership in exchange for money of an equal amount from loan proceeds of the partnership. The transferred property was the only property of the partnership. The Tax Court found that the partnership's ability to repay the bank loan from which the partner was paid would depend on the partnership's subse-

quent economic fortunes. *Id.,* p 320. The Tax Court ruled these circumstances were more indicative of a § 721 transaction as opposed to a § 707 transaction. In reaching this conclusion, the Tax Court stated:

> An important feature distinguishing transfers in the capacity of a partner from section 707 transactions is whether payment by the partnership to the partner is at the risk of the economic fortunes of the partnership. [*Otey, supra,* p 320.]

In the case at bar, we, like the Tax Tribunal, conclude that payment by APC of 10,000,000 units to Dow was not at the risk of the economic fortunes of the partnership. First, the transfer of the units did not represent all the property of the partnership. Second, APC transferred its units to a powerful and profitable corporation. We do not see how having a strong company attain interest would hurt economic fortunes. Finally, APC received substantial property (Dow's oil and gas division) from Dow in exchange for its payments which included leaseholds which could provide a large amount of natural resources.

In light of the above findings, we believe that the portion of the transaction involving the 10,000,000 units was a sale requiring recapture under MCL 208.23(b); MSA 7.558(23)(b).

In sum, while we have concluded that there can be a partial sale and partial contribution arising out of a single transaction, we believe that the entire transaction between Dow and APC constituted a sale necessitating recapture of a capital acquisition deduction by Dow. Therefore, we cannot say the Tax Tribunal in rendering its decision made an error of law or adopted a wrong principle. *Antisdale v City of Galesburg, supra.*

We affirm the May 23, 1989, opinion and judgment of the Tax Tribunal assessing a single business tax liability against Dow.

Affirmed.