JONES & LAUGHLIN STEEL CORPORATION v CITY OF WARREN

Docket No. 119309. Submitted October 1, 1991, at Lansing. Decided January 10, 1992; approved for publication March 25, 1992, at 9:15 A.M.

Jones & Laughlin Steel Corporation petitioned the Michigan Tax Tribunal, seeking review of a $4,773,000 assessment for 1983 by the City of Warren on industrial personal property. The city, in making the assessment, determined the true cash value of the property on the basis of its being in use. Jones & Laughlin contended that the true cash value should be determined on the basis of the sale of the property as scrap nine months after the relevant tax date of December 31, 1982. The Tax Tribunal entered judgment in favor of the city, adopting the city's assessment and valuation figures without making an independent determination of true cash value after determining that Jones & Laughlin failed to prove true cash value. Jones & Laughlin appealed.

The Court of Appeals *held:*

1. The Tax Tribunal erred in refusing to consider the price for which the property was sold after the tax date. The price was a relevant consideration in determining its value under the market approach to valuation, and any lapse of time between the tax date and the sale date was related to the weight, not the relevance, of the evidence.

2. The tribunal further erred in failing to make an independent determination of the true cash value.

3. Remand is required for an independent valuation by the tribunal. On remand, the tribunal must also determine the extent to which the property has become obsolete so that the assessment accurately reflects obsolescence. Finally, the tribunal must determine the separate true cash value of each item of disputed property.

Reversed and remanded.

REFERENCES

Am Jur 2d, State and Local Taxation §§ 753, 754.

See the Index to Annotations under Taxes.

1. TAXATION — ASSESSMENTS OF PERSONAL PROPERTY — TRUE CASH
     VALUE — TAX TRIBUNAL.
     The Michigan Tax Tribunal, in determining the valuation of
     personal property for tax assessment purposes, must make an
     independent determination of true cash value utilizing an
     approach that provides the most accurate valuation under the
     circumstances of the individual case.

2. TAXATION — TRUE CASH VALUE.
     True cash value of personal property for taxation purposes is
     synonymous with fair market value and means the usual
     selling price of the property.

3. TAXATION — ASSESSMENTS OF PERSONAL PROPERTY — TRUE CASH
     VALUE — BURDEN OF PROOF.
     A taxpayer, when challenging an assessment of personal property
     before the Michigan Tax Tribunal, has the burden of establish-
     ing the true cash value of the property.

4. TAXATION — ASSESSMENTS OF PERSONAL PROPERTY — MARKET
     APPROACH TO VALUATION.
     Evidence of the price at which an item of personal property
     actually sold is relevant to the proper valuation of the item for
     personal property tax purposes and is admissible in a proceed-
     ing before the Michigan Tax Tribunal brought by a taxpayer
     challenging an assessment; any lapse of time between the
     relevant tax date and the sale date is related not to the
     relevance of the evidence of the price paid, but to the weight
     that evidence should be given.

*Bodman, Longley & Dahling* (by *John C. Cashen*), for Jones & Laughlin Steel Corporation.

*W. Thomas Marrocco, Jr.,* for City of Warren.

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *Neil H. Goodman*), for Fitzgerald Public Schools.

Before: MARILYN KELLY, P.J., and WAHLS and FITZGERALD, JJ.

PER CURIAM. Petitioner Jones & Laughlin Steel Corporation appeals as of right from a judgment of the Michigan Tax Tribunal that dismissed peti-

tioner's appeal concerning the true cash value and lawful assessed value for tax year 1983 of personal property located at its facility in the City of Warren. We reverse and remand this case to the Tax Tribunal for further findings of fact and an independent assessment of true cash value.

The relevant tax date was December 31, 1982. Petitioner's personal property was originally assigned an assessed value on the roll for tax year 1983 of $4,933,100. Petitioner unsuccessfully protested the assessment to the local board of review and then sought review by the Tax Tribunal. After the tribunal ordered a continuance following bankruptcy proceedings involving petitioner, a hearing was held in April 1988. The parties stipulated to the value of the real property at the Warren facility and submitted proofs with respect to the value of the personal property. The main point of disagreement concerned the facility's blooming mill and billet mill, which together represented a substantial portion, if not most, of the total value of the personal property.[1]

Petitioner's proofs showed that the use of blooming and billet mills in steel production was no longer the most cost-advantageous method and that there is increasing use of the more efficient continuous-casting method of fabricating steel. Furthermore, 1982 was a difficult year for the steel industry, and in the last quarter of 1982 petitioner was operating at forty-six percent of capacity and sustaining a monthly loss of approximately $1 million. In November 1982, petitioner purchased an idle continuous-casting facility in Pennsylvania and made plans to sell or close the

[1] Although petitioner makes occasional references on appeal to the valuation of other equipment, that equipment is not identified and petitioner's argument seems solely concerned with the blooming mill and the billet mill. Our discussion will therefore be likewise limited.

Warren facility. Efforts to sell the Warren facility began and operations there ceased in May 1983. The facility was purchased in September 1983 by Youngstown Industrial, a machinery dealer and real estate developer, which hoped to find a buyer who would use the facility for steel production, or, failing that, planned to demolish the facility and redevelop the land. Youngstown Industrial paid petitioner $1,001,000 for the facility's equipment, including the mills. According to a Youngstown employee, prospective buyers did not desire the entire facility because it was obsolete. Although Youngstown was able to sell a portion of the blooming mill for $30,000, the remainder of the blooming mill and the billet mill were eventually sold as scrap. Gross proceeds from all equipment and scrap sales totaled $420,000. Petitioner's proofs also included an appraisal, prepared in anticipation of the sale of the facility, that valued the blooming and billet mills together at $500,000. According to the appraiser, his research found only two comparable sales of blooming mills. These mills had sold for approximately twice their scrap value. Petitioner argued that true cash value was shown by the sale price of its equipment to Youngstown, plus original cost-less-depreciation estimates of other property not included in the Youngstown sale but owned or leased by petitioner on the tax date. Petitioner's estimate of true cash value was $2,331,866.

The respondent city's proofs were based on an application of the original cost multipliers found in the Tax Assessor's Manual to petitioner's equipment. According to the city's application of the assessor's manual, the true cash value of petitioner's personal property, including the mills, on December 31, 1982, was $9,466,000. This figure was based on the use of the long-life, in-use table

of multipliers. Petitioner argued that the correct long-life multiplier to use for the mills was that applicable to surplus equipment, which, according to petitioner's calculations, would have resulted in a total true cash value of $3,118,800. Another estimate of true cash value submitted by the respondent school district, which was greater than the city's estimate, was rejected by the Tax Tribunal on the ground that it did not adequately account for the depreciation and obsolescence of the blooming mill.

The Tax Tribunal held that petitioner did not present sufficient evidence to allow it to make an independent determination of true cash value and that petitioner therefore had failed to meet its burden of proof. The tribunal also held that, because there was no evidence that the blooming mill was not in use on the tax date, the city's use of the in-use multiplier, rather than the surplus multiplier, in its assessment was proper. The tribunal then accepted the city's true cash value estimate of $9,466,000 and assessment of $4,773,000, apparently for the reason that petitioner had not met its burden of proof. This appeal followed.

This Court's review of a decision of the Tax Tribunal is limited. When fraud is not alleged, we ask whether the Tax Tribunal committed an error of law or adopted a wrong principle. Const 1963, art 6, § 28; *William Mueller & Sons, Inc v Dep't of Treasury,* 189 Mich App 570, 572; 473 NW2d 783 (1991). We will accept the tribunal's factual findings as final, provided they are supported by competent, material, and substantial evidence. *Antisdale v City of Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984); *Dow Chemical Co v Dep't of Treasury,* 185 Mich App 458, 462-463; 462 NW2d 765 (1990). Substantial evidence must be more

than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence. *Id.* at 463; *Russo v Dep't of Licensing & Regulation,* 119 Mich App 624, 631; 326 NW2d 583 (1982).

The Tax Tribunal is under a duty to apply its expertise to the facts of a case to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances. *Antisdale, supra* at 277; *Teledyne Continental Motors v Muskegon Twp,* 163 Mich App 188, 193; 413 NW2d 700 (1987). True cash value is synonymous with fair market value. MCL 211.27; MSA 7.27. Regardless of the approach selected, the value determined must represent the usual price for which the subject property would sell. *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland,* 437 Mich 473, 485; 473 NW2d 636 (1991). The three most common approaches to valuation are the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach. *Id.* at 484-485. Only the latter two methods were applied in the present case. The burden of proof was on petitioner to establish the true cash value of the property. MCL 205.737(3); MSA 7.650(37)(3).

The market approach is the only valuation method that directly reflects the balance of supply and demand for property in marketplace trading. *Antisdale, supra* at 277-278, n 1; *Teledyne Continental Motors, supra* at 193. Petitioner's proofs regarding the $1,001,000 sale of its equipment to Youngstown Industrial was intended to show the relatively small value the marketplace put on aging steelmaking equipment, including the mills. The Tax Tribunal, however, erred as a matter of law in its treatment of petitioner's evidence re-

garding the sale. The tribunal held: "A sale that occurs *after* the tax date has little or no bearing on the assessment made prior to the sale." (Emphasis in original.)

We disagree. Unlike some situations involving assessments of industrial property for which no ready market exists and a hypothetical buyer must be posited,[2] in this case the equipment was actually sold in a commercial transaction, albeit after the tax date. We believe that evidence of the price at which an item of property actually sold is most certainly relevant evidence of its value at an earlier time within the meaning of the term "relevant evidence." MRE 401. Although the sale to Youngstown Industrial occurred approximately nine months after the tax date, the lapse in time is important only with respect to the weight that should be given the evidence, not to the relevance of the evidence. While the tribunal correctly noted that the sale price of a particular piece of property does not control its determination of the value of that property, *Antisdale, supra* at 278, the tribunal's opinion that the evidence "has little *or no* bearing" on the property's earlier value suggests that the evidence was rejected out of hand. Such cursory rejection would be erroneous.

The tribunal further erred in failing to make an independent determination of the true cash value of the property. The tribunal apparently believed that no such determination was necessary after it concluded that petitioner had failed to meet its burden of proof and dismissed petitioner's appeal. The tribunal correctly noted that the burden of proof was on petitioner, MCL 205.737(3); MSA 7.650(37)(3). This burden encompasses two separate

---

[2] See, e.g., *Teledyne Continental Motors v Muskegon Twp,* 163 Mich App 188, 192-193; 413 NW2d 700 (1987), and *Clark Equipment Co v Leoni Twp,* 113 Mich App 778, 785; 318 NW2d 586 (1982).

concepts: (1) the burden of persuasion, which does not shift during the course of the hearing; and (2) the burden of going forward with the evidence, which may shift to the opposing party. *Kar v Hogan,* 399 Mich 529, 539-540; 251 NW2d 77 (1976); *Holy Spirit Ass'n For the Unification of World Christianity v Dep't of Treasury,* 131 Mich App 743, 752; 347 NW2d 707 (1984). The tribunal's decision, however, seems analogous to the entry of a directed verdict upon the failure of a plaintiff's proofs. To the extent this analogy may be accurate in this case, the entry of judgment against petitioner for its failure to provide sufficient evidence was erroneous because, while petitioner may not have met its burden of persuasion, it did meet its burden of going forward with evidence.

Even if the tribunal had correctly concluded that petitioner's proofs had failed, the tribunal still would be required to make an independent determination of the true cash value of the property. The tribunal may not automatically accept a respondent's assessment, but must make its own findings of fact and arrive at a legally supportable true cash value. *Pinelake Housing Cooperative v Ann Arbor,* 159 Mich App 208, 220; 406 NW2d 832 (1987); *Consolidated Aluminum Corp v Richmond Twp,* 88 Mich App 229, 232-233; 276 NW2d 566 (1979). In this case, the tribunal did consider whether the in-use multiplier or the surplus multiplier should have been used in respondent's cost-less-depreciation assessment,[3] but then simply accepted respondent's assessment without discussing why the assessment reflected the true cash value

---

[3] We agree with the Tax Tribunal that the city's use of the in-use multiplier was correct. Although petitioner may have been in the process of abandoning the Warren facility on the tax date, we do not believe that petitioner has shown the concurrent requirement that the property had been declared as surplus as the word "surplus" is commonly understood.

of the property. On remand, the tribunal shall make an independent determination of true cash value. We note that the tribunal is not bound to accept either of the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination. *Meadowlanes Ltd Dividend Housing Ass'n, supra* at 485-486; *Wolverine Tower Associates v Ann Arbor,* 96 Mich App 780; 293 NW2d 669 (1980).

We also hold that the Tax Tribunal's factual finding that the mills were only partially obsolete was supported by the evidence. Although petitioner continually implied on appeal that the tribunal found that the mills were totally obsolete, a review of the tribunal's decision shows that it found the mills to be only partially obsolete. However, the tribunal made no findings with regard to the extent of the obsolescence of the mills, a major point of contention below. On remand, the tribunal is instructed to find the extent to which the mills have suffered both functional and economic obsolescence. See *Fisher-New Center Co v Tax Comm,* 380 Mich 340, 362; 157 NW2d 271 (1968); *Teledyne Continental Motors v Muskegon Twp,* 145 Mich App 749, 754-755; 378 NW2d 590 (1985). The tribunal is also instructed to find the extent to which the assessor's manual adequately accounts for any obsolescence that may be found. We note that the record shows that the multiplier table for long-lived, in-use equipment, upon which the city's assessment was based, does not account for depreciation or obsolescence beyond a life of fifteen years. Put another way, the assessor's manual apparently would allow equal amounts of depreciation and obsolescence for an assessment of a thirty-two-year-old blooming mill and a nine-

teenth-century traction engine that remained in use. Finally, the tribunal is instructed to consider separately the true cash values of the blooming mill and the billet mill. If the tribunal believes it to be necessary, it may reopen proofs in order to resolve these issues.

Reversed and remanded to the Tax Tribunal. We do not retain jurisdiction.