*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALEXANDER KATHAWA,

Petitioner-Appellant,

v

TOWNSHIP OF WEST BLOOMFIELD,

Respondent-Appellee.

UNPUBLISHED
February 24, 2022

No. 355907
Tax Tribunal
LC No. 20-002685-TT

Before: CAVANAGH, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Petitioner appeals as of right the December 9, 2020 Final Opinion and Judgment of Tax Tribunal (tribunal) ruling in favor of respondent and concluding that the true cash value, state equalized value, and taxable value of the subject property were $1,749,160; $874,580; and $866,490, respectively. We affirm.

## I. FACTUAL BACKGROUND

Petitioner purchased the residential property located at 6300 North Shore Drive, West Bloomfield Township, Michigan, on September 14, 2018, for $1,150,000. On October 9, 2018, Armstrong Appraisal & Consulting, LLC assessed the property at $1,300,000. Respondent assessed the true cash value, state equalized value, and taxable value of the property for the 2020 tax year as $1,866,620; $943,310; and $866,490, respectively. Petitioner appealed respondent's assessment by filing a petition in the small claims division of the tribunal on July 15, 2020. Both parties submitted valuation disclosures.

A hearing was conducted by telephone on November 2, 2020. On December 9, 2020, the tribunal issued a final opinion and judgment in favor of respondent, adopting respondent's evidence and concluding that the true cash value, state equalized value, and taxable value of the subject property was $1,749,160; $874,580; and $866,490, respectively. This appeal followed.

## II. STANDARD OF REVIEW

-1-

"Absent fraud, our review of [tribunal] decisions is limited to determining whether the [tribunal] erred in applying the law or adopted a wrong legal principle." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 627; 752 NW2d 479 (2008). Questions of statutory interpretation are reviewed de novo. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012).

In addition, the tribunal's factual findings must be supported by competent, material, and substantial evidence. *Dow Chemical Co v Dep't of Treasury*, 185 Mich App 458, 462-463; 462 NW2d 765 (1990). "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence required in most civil cases." *Id*.

III. LAW AND ANALYSIS

Petitioner argues that the tribunal's final opinion and judgment was not supported by competent, substantial, and material evidence. We disagree.

The Michigan Constitution "provides for the uniform taxation of property assessed at not in excess of 50 percent of its true cash value." *President Inn Props LLC v Grand Rapids*, 291 Mich App 625, 636; 806 NW2d 342 (2011), citing Const 1963, art 9, § 3. True cash value is "the usual selling price" or "fair market value." MCL 211.27(1); *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013). We have stated that fair market value "is the standard and not merely a guideline" for determining the value of a property. *Safran Printing Co v Detroit*, 88 Mich App 376, 381; 276 NW2d 602 (1979). In a valuation dispute, the task of the tribunal is to find the true cash value by making an independent determination of the value of the property. *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 354; 483 NW2d 416 (1992). "The petitioner has the burden of proof in establishing the true cash value of the property." MCL 205.737(3).

There are different approaches used for determining the value of a property. See *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 390; 576 NW2d 667 (1998). One approach is the cost-less-depreciation approach (i.e., the cost approach). *Id*. Under this approach, "true cash value is derived by adding the estimated land value to an estimate of the current cost of reproducing or replacing improvements and then deducting the loss in value from depreciation in structures, i.e., physical deterioration and functional or economic obsolescence." *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 484 n 18; 473 NW2d 636 (1991). A second approach is the sales-comparison approach. *Great Lakes*, 227 Mich App at 390. Under this approach, "true cash value is derived by analyzing recent sales of similar properties, comparing those properties with the subject property, and adjusting the sales price of the comparable properties to reflect differences." *Meadowlanes*, 437 Mich at 492.

The tribunal is required to select a valuation methodology that is recognized as accurate and that bears a reasonable relationship to the property's true cash value. *Safran*, 88 Mich App at 380. "[T]he tribunal is not bound to accept either of the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination." *Jones & Laughlin*, 193 Mich App at 356. "The [tribunal] may correlate, reconcile, and weigh valuations derived under various approaches with the ultimate

goal of considering all factors under the circumstances in determining the fair market value of the subject property." *President Inn*, 291 Mich App at 640.

## A. PERCENTAGE-BASED ADJUSTMENT METHOD

While respondent utilized both the cost approach and the sales-comparison approach, petitioner's sales grid—prepared by petitioner's counsel, who is not a valuation expert—used only the sales-comparison approach and chose to use the percentage-based adjustment method in doing so.[1] The tribunal gave no weight to petitioner's adjustments because petitioner used the percentage-based adjustment method. Petitioner challenges this conclusion, arguing that the percentage-based adjustment method is a valid and commonly-used adjustment method, and the tribunal failed to support its rejection of petitioner's adjustments. We disagree.

Again, "the tribunal is not bound to accept either of the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination." *Jones & Laughlin*, 193 Mich App at 356. Therefore, the tribunal was not required to utilize petitioner's percentage-based adjustment method.

The tribunal noted that percentage-based adjustments are normally used for commercial properties, not residential properties. Applying percentage-based adjustments to a residential property such as the subject property, noted the tribunal, "does not illustrate those features that are truly similar between comparable and subject properties" and is therefore "not meaningful in a residential context." This was particularly the case for the subject property, which was simply a single-family residential property. As the tribunal stated: "Single family residential properties are more typically analyzed and adjusted on the basis of sale price and dollar amounts . . . . Said differently, the subject property is not so complex . . . that may warrant adjustments on a percentage basis."

Petitioner argues that the tribunal failed to provide support for its conclusion, but he appears to have overlooked the clearly delineated reasons provided by the tribunal in its final opinion and judgment. Petitioner also argues that the percentage-based adjustment method has been approved by the Appraisal Institute for all sales comparison analyses. However, the fact that it may have been approved does not necessarily mean that it is the better approach or that the tribunal's conclusion is incorrect. Petitioner further argues that adjustments are commonly made using the percentage-based adjustment method and cites *The Appraisal of Real Estate*, 15th Edition (2020). However, petitioner provides, in a footnote, language from the 15th edition of *The Appraisal of Real Estate* that actually supports the tribunal's decision. Petitioner writes:

> During 2020, the Appraisal Institute released the 15th Edition of the *Appraisal of Real Estate*. This volume takes a slightly different approach to the question.

---

[1] As explained by the tribunal, there are multiple methods of adjustment for the sales-comparison approach, and "[w]hile percentage adjustments are acknowledged in valuation practice and theory, this form of application is relevant to commercial properties. Single family residential properties are more typically analyzed and adjusted on the basis of sale price and dollar amounts."

"While it is possible to calculate a price per square foot of gross living area for a house, most residential appraisers do not focus on that unit of comparison but instead base the analysis on the total price."

In other words, most residential valuations focus on the actual sale price rather than an adjusted sale price arrived at through percentage-based adjustments. The tribunal recognized this in its final opinion and judgment: "[E]quating a price per square foot ($/SF) as opposed to an adjusted sale price is not meaningful in a residential context." Therefore, the tribunal did not err by rejecting petitioner's percentage-based adjustment method.

For these reasons, petitioner's argument falls short.

## B. COMPARABLE SALES

Petitioner next takes issue with the tribunal's decision to choose the 6530 Commerce Road, West Bloomfield, Michigan property as a common comparable sale and not consider the other comparable sales provided by him. We disagree.

We first note that petitioner himself did not consistently rely on all of the comparable sales listed in his valuation disclosure. More importantly, there is nothing to suggest that the tribunal's decision was not one the parties could have expected. The 6530 Commerce Road property was the only sale included in all of the documents submitted by the parties. Respondent's valuation disclosure, petitioner's valuation disclosure, and the Armstrong appraisal report all list 6530 Commerce Road as a comparable sale. This was true for none of the other sales. The tribunal is not required to utilize all of the comparable sales provided by a given party. Rather, the tribunal is required to make its own independent determination regarding true cash value. MCL 211.27(1).

The tribunal's conclusion to rely upon the 6530 Commerce Road sale is further supported by the fact that there are a number of similarities between 6530 Commerce Road and the subject property that make it a relevant comparable sale for purposes of determining value under the sales-comparison approach. For instance, 6530 Commerce Road is the property that is closest in size to the subject property.

Petitioner responds that 6530 Commerce Road is a poor comparable sale because it sold 19 months before December 31, 2019, the relevant assessment date; is built in a different style; is situated on the opposite side of the lake; and is 35 years newer than the subject property. Petitioner argues the other comparable sales presented in petitioner's valuation disclosure are at least as relevant as the 6530 Commerce Road sale. Again, however, no Michigan caselaw suggests that the tribunal was required to use all of petitioner's comparable sales, particularly where petitioner framed those sales in the context of the percentage-based adjustment method. Merely because, in petitioner's view, the additional comparable sales might be as relevant as 6530 Commerce Road does not mean that (1) they actually are as relevant, (2) their relevance is helpful in determining value for the subject property, or (3) that 6530 Commerce Road is therefore not a good comparable sale.

For these reasons, petitioner's argument falls short.

## C. SALE PRICE

Petitioner next argues that the tribunal erred by essentially ignoring the recent sale of the subject property to him at $1,200,000. We disagree.

The tribunal did not err in not giving significant weight to the recent sale of the subject property for two reasons. First, Michigan precedent establishes that sale price is not determinative of a property's value:

> [T]he selling of a particular piece of property is not conclusive as evidence of the value of that piece of property. . . . The most obvious deficiency in using the sales price of a piece of property as conclusive evidence of its value is that the ultimate sale price of the property, as a result of many factors, personal to the parties or otherwise, might not be its "usual" price. [*Antisdale v City of Galesburg*, 420 Mich 265, 278; 362 NW2d 632 (1984).]

Likewise, we have stated that "the sale price of a particular piece of property does not control [the] determination of the value of that property . . . ." *Jones & Laughlin*, 193 Mich App at 354. Therefore, because the sale price of the subject property is not ultimately conclusive for purposes of determining value, the tribunal did not err in failing to give significant weight to the recent sale of the subject property. Second, the sale of the subject property occurred on September 14, 2018, more than a year before the relevant assessment date of December 31, 2019. Presumably, the subject property appreciated in value after it was sold to petitioner. Indeed, the Armstrong appraisal report, which was issued less than a month after the subject property was sold to petitioner, valued the subject property at $1,300,000. This was $100,000 more than the sale price. In other words, the evidence showed that the subject property was appreciating in value, which minimized the anchoring relevance of the sale price.

For these reasons, petitioner's argument is falls short.

## D. RULES OF EVIDENCE

Petitioner argues that the tribunal violated MCL 205.746(1),[2] which states that "[t]he tribunal may give probative effect to evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." He argues that by applying an unduly exacting standard, the tribunal incorrectly rejected "evidence of a type commonly relied upon by reasonably prudent persons," specifically his comparable sales and the Armstrong appraisal report. We disagree.

Initially, petitioner's argument misses the mark because he apparently interprets the statute to mean that the tribunal *must* admit "evidence of a type commonly relied upon by reasonably prudent persons." However, the statute states instead that the tribunal *may* admit "evidence of a type commonly relied upon by reasonably prudent persons." "The word 'shall' is generally used to designate a mandatory provision, while 'may' designates discretion." *Mollett v City of Taylor*,

---

[2] Petitioner cites Mich Admin Code, R 792.10287(3), but we interpret his argument as contemplating MCL 205.746(1).

197 Mich App 328, 339, 494 NW2d 832 (1992). Petitioner mistakes a permissive statute for a mandatory one.

In any event, as previously explained, the tribunal did not err by failing to consider his comparable sales because he invoked the percentage-based adjustment method. And, with regard to the Armstrong appraisal report, the tribunal explained its decision to reject it:

> Petitioner's bank appraisal report . . . is insufficient in the determination of market value for the subject property. First, the effective date of this report is October 9, 2018, and not the effective tax day of December 31, 2019, for this appeal. All of the comparable sales are analyzed to a different point in time. Second, site adjustments are adjusted for acreage as well as site square feet. This lack of consistency is confusing and infers that site size alone is the only factor for a site adjustment. The comparable sites were not described in lake front feet, topography, site view, street frontage, site depth, etc. Given the subject's larger lake frontage of 200 feet, greater analysis would be expected. Third, this appraisal report was exclusively for banking/lending/underwriting purposes. Acronyms and cryptic notes in the adjustment grid are not meaningful to an average reader of this report.

We conclude the tribunal did not err by failing to consider the Armstrong appraisal report because, as the tribunal explained, it (1) is not applicable to the effective assessment date of December 31, 2019; and (2) was prepared for banking purposes, not valuation purposes. Specifically, the Armstrong appraisal report was prepared fourteen months before December 31, 2019, for a refinancing, and contained no adjustments for the time that elapsed between the sale of the subject property and the assessment date.

Petitioner maintains that his argument is supported by *Kozma v Twp of Independence*, unpublished per curiam opinion of the Court of Appeals, issued November 8, 1996 (Docket No. 183405),[3] in which we determined that refinancing appraisals are the type of evidence relied upon by prudent persons. *Kozma*, unpub at 2. However, *Kozma* does not stand for the proposition that the tribunal was *required* to give weight to the Armstrong appraisal report, which was prepared for refinancing. Rather, it stands for the proposition that the tribunal may give weight to refinancing appraisals. In other words, the fact that such appraisals fall within the definition of MCL 205.746(1) does not mean they must be considered; it only means they are the kind of evidence that tribunals may consider if warranted by the case at hand.

For these reasons, petitioner's argument falls short.

E. 2943 WARNER SALE

Petitioner's final argument is that the tribunal erroneously relied on the sale of 2943 Warner Road, West Bloomfield, Michigan, in reaching its final valuation decision. Specifically, petitioner argues that the tribunal did not realize that its final valuation number was on the basis of

---

[3] In Michigan, unpublished cases are not legally binding, but can be considered for their persuasive value. MCR 7.215(C)(1).

respondent's adjustments to 2943 Warner Road. Petitioner further argues that the sale of 2943 Warner Road is not relevant because it occurred five months after the relevant assessment date, December 31, 2019, so for this additional reason, the tribunal should not have relied on it. We disagree.

Petitioner misapprehends the tribunal's final opinion and judgment. Petitioner claims that the final valuation reached by the tribunal was intended to be based only on the 6530 Commerce Road comparable sale. This is incorrect. The tribunal stated:

> [T]he parties' utilization of a common comparable sale provides the most reliable and credible valuation evidence for the determination of market value . . . . Therefore, a reasoned and reconciled determination of market value for the subject places weight on the parties' common comparable sale located at 6530 Commerce Road which supports Respondent's revised [true cash value] contention.

In other words, the existence of a common comparable sale, 6530 Commerce Road, was the most reliable evidence for determining the value of the subject property, and because that common comparable sale supported respondent's valuation, the tribunal sided with respondent. The tribunal did not claim to base its final valuation on 6530 Commerce Road alone; it stated that the use of 6530 Commerce Road as a common comparable sale generally supported an adoption of respondent's valuation.

Further, while 2943 Warner was sold about five months after the assessment date of December 31, 2019, that fact does not render the sale irrelevant. It still was a comparable sale of a nearby property that could be considered in determining the value of the subject property in the tribunal. Indeed, we specifically have held that the tribunal may consider a sale that occurs after the assessment date when valuing a property. See *Jones & Laughlin*, 193 Mich App at 354.

## IV. CONCLUSION

In sum, the tribunal's conclusion was supported by substantial, competent, and material evidence. The tribunal did not err in rejecting petitioner's percentage-based adjustments, nor did it err by choosing 6530 Commerce as a common comparable sale, or choosing not to give determinative weight to the Armstrong appraisal report. The tribunal also did not err by choosing not to give determinative weight to the sale price of the subject property to petitioner, and it did not apply an unduly exacting standard to the evidence. Finally, petitioner's argument that the tribunal unwittingly based its final determination on 2943 Warner Road, despite choosing 6530 Commerce Road as the common comparable sale and exclusive basis for the valuation of the subject property, is not reflective of the tribunal's decision. We affirm.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Michael J. Riordan