SWEEPSTER, INC v SCIO TOWNSHIP

Docket No. 194587. Submitted September 3, 1997, at Detroit. Decided September 23, 1997, at 9:15 A.M.·

Sweepster, Inc., filed a petition in the Michigan Tax Tribunal to challenge property tax assessments by Scio Township on commercial realty that the petitioner had purchased from Chrysler Corporation under an agreement by which Chrysler was to indemnify the petitioner or its successors for any costs incurred in remediating environmental contamination caused by Chrysler. The petitioner claimed that the property is now worthless because public health authorities have determined that water from a well on the property is contaminated and unfit for human consumption. The tribunal entered a judgment that upheld the township's valuation of the property. The petitioner appealed.

The Court of Appeals *held*:

1. The township's valuation of the property was based on comparable sales and capitalization of income, which were recognized in *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473 (1991), as traditional methods of determining true cash value.

2. The indemnification agreement between the petitioner and Chrysler was a value-influencing factor that the tribunal properly could, and did, consider when determining the value of the petitioner's property.

3. In light of the indemnification agreement, the tribunal did not err in not deducting from the value of the property the cost of remediating the contamination.

4. Statements by a hearing referee for the tribunal that the property continued to be used in an ongoing, profitable business and that storage space in the building continued to be leased out despite the contamination do not indicate that the improper use-value approach to valuation was used in this case. The valuation adopted by the tribunal was based on the sales-comparison and capitalization-of-income approaches.

Affirmed.

TAXATION — REAL PROPERTY — VALUATION — ENVIRONMENTAL CONTAMINATION — INDEMNIFICATION AGREEMENTS.

An indemnification agreement by which a seller of realty agrees to reimburse costs incurred by a buyer of the realty or the buyer's successors in interest in remediating environmental contamination caused by the seller is a value-influencing factor that is properly considered when determining the true cash value of the realty for taxation purposes following the sale of the realty and the discovery of contamination on the property.

*John S. Gilbreath, Jr.*, for the petitioner.

*Reading & Etter* (by *John L. Etter*), for the respondent.

Before: MARKMAN, P.J., and McDONALD and FITZGERALD, JJ.

PER CURIAM. Petitioner appeals as of right from the decision of the Michigan Tax Tribunal setting petitioner's assessment for a parcel of commercial property. Petitioner contends that the property is worthless because well water on the property cannot be used for drinking purposes because of contamination. We affirm.

The property at issue is zoned I-1 industrial, consists of forty-seven acres, and has been improved with industrial buildings containing approximately 440,000 square feet of space. The oldest part of the building was constructed in 1948 and the newest was added in 1978. Petitioner purchased the subject property from Chrysler Corporation in 1986 for $3.5 million. The purchase agreement recognized environmental problems associated with the property and provided that Chrysler was to remove underground storage tanks and indemnify petitioner for any environmental contamination found as a result of Chrysler's former operations. In July of 1988, the Washtenaw County Board of Public Health ordered that the use of well water at the site for drinking be

discontinued after testing revealed that the water was contaminated with solvents. Since that time, Chrysler has paid for bottled water to be provided to the site, has hired environmental consultants to determine the nature of the contamination, and has paid for a new well, pumphouse, and pipeline. Petitioner appealed its property assessment for the years 1990 to 1993, arguing that the property had been rendered worthless because of the environmental problems. The hearing referee determined that the best evidence of the property's value was the price paid by petitioner in 1986 on the basis of its finding that the parties were aware of the environmental problems at the time and took this factor into consideration in negotiating the terms of the purchase agreement. The assessment was adjusted in subsequent years to take into consideration the value of improvements added by petitioner and depreciation on the buildings, and then reduced by ten percent to compensate for the "stigma" associated with contaminated property.[1] The Tax Tribunal affirmed.

Petitioner first claims, in reliance upon *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 484-485; 473 NW2d 636 (1991), that the tribunal adopted a wrong principle of valuation because the indemnification provision in the purchase agreement with Chrysler should not have been considered in the assessment of the property. We disagree. Rather, *Meadowlanes* expressly held that intangible value-influencing factors are properly taken into

---

[1] After the hearing but before an opinion was entered, tax years 1994 and 1995 were added to petitioner's appeal in the interest of judicial economy.

account when determining the true cash value of property.

In *Meadowlanes, id.* at 484-485, the Supreme Court outlined the various methods used to determine the true cash value of a particular piece of property:

> There are three traditional methods of determining true cash value, or fair market value, which have been found acceptable and reliable by the Tax Tribunal and the courts. They are: (1) the cost-less-depreciation approach, (2) the sales-comparison or market approach, and (3) the capitalization-of-income approach. Variations of these approaches and entirely new methods may be useful if found to be accurate and reasonably related to the fair market value of the subject property. . . . Regardless of the valuation approach employed, the final value determination must represent the usual price for which the subject property would sell.

In that case, the taxpayer's appraiser, an individual who also testified for petitioner in the instant case, appraised the property using a mortgage/equity approach. *Id.* at 486-488. The Court explained that this approach was "flawed because it values the property in large part by valuing its underlying mortgage in a theoretical commercial paper market." *Id.* at 492. The Court ordered that, on remand, the true cash value of the property was "to be redetermined using the three traditional valuation approaches." *Id.* at 495. The reasons supporting the Court's rejection of the valuation approach in *Meadowlanes* are inapplicable to the instant case because in this case both appraisers used the traditional comparable-sales and capitalization-of-income approaches. Neither appraiser attempted to value the property by determining the value of the indemnification agreement. Conse-

quently, we find petitioner's arguments in this regard to be without merit.

The Court in *Meadowlanes* went on to address the influence of various factors on the value of property:

> In *Antisdale* [*v City of Galesburg*, 420 Mich 265; 362 NW2d 632 (1984)], this Court addressed the true cash value of property . . . and focused on the legislative definition of true cash value in MCL 211.27(1); MSA 7.27(1). We noted that that statute lists a number of value-influencing factors such as zoning and location that should be considered when determining the "usual selling price" of real property. In particular, we recognized that although these factors are intangibles, and not taxable in and of themselves, they can increase or decrease the value of property. . . .
>
> Similarly, although the mortgage-interest subsidy is an intangible, and not taxable in and of itself, it is a value-influencing factor. In *Antisdale, supra* at 284, we recognized that without the subsidy these types of properties would not exist. Therefore, the value of the subsidy, if any, should be reflected in the assessment process. [*Id.* at 495-496.]

In the instant case, the right to indemnification under the purchase agreement is a clear intangible. See 63C Am Jur 2d, Property, § 11, p 278. The indemnification agreement unquestionably affects the value of the subject property because it relieves petitioner and its successors of the financial consequences of the contamination. Petitioner cannot reasonably contend that the indemnification agreement has no value when it has already benefited from it considerably by having bottled water delivered, having a study performed to determine the type of contamination, and having a new well drilled along with a pumphouse and pipe installed—all at no cost to itself. The indemnification agreement in the instant case is comparable

to an environmental subsidy that affects the value of the subject property, just as the tax subsidies at issue in *Meadowlanes, supra* at 495-496, affected the value of that property. Consequently, we find that the Tax Tribunal properly took the indemnification agreement into consideration when determining the value of petitioner's property.

Petitioner next contends that the tribunal erred in failing to deduct the cost to eliminate the contamination from the value of the property. The tribunal's factual determination that petitioner and its successors will not be financially responsible for the cost of cleanup must be affirmed if it is supported by competent, material, and substantial evidence. Const 1963, art 6, § 28; *Speaker-Hines & Thomas, Inc v Dep't of Treasury*, 207 Mich App 84, 87; 523 NW2d 826 (1994). Substantial evidence "is that which a reasonable mind would accept as adequate to support a decision"; it "is more than a mere scintilla but less than a preponderance of the evidence." *McBride v Pontiac School Dist (On Remand)*, 218 Mich App 113, 123; 553 NW2d 646 (1996). "Under this test, it does not matter that the contrary position is supported by more evidence, that is, which way the evidence preponderates, but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable inferences were drawn." *Id.*

Petitioner's arguments in this regard are all premised upon petitioner or its successors being held liable for the costs of cleanup. However, there was no evidence presented at the hearing to support this contention. The tribunal recognized "the existence of what appears to be a valid and enforceable indemnification clause on its face." Because the indemnifica-

tion provision expressly relieves petitioner and its successors from paying the cost of remediating contamination caused by Chrysler's former operations on the site, the only potential liability petitioner or its successors might incur would be for attorney fees to enforce the indemnification clause if Chrysler breached its duties under the purchase agreement. While the prospect of litigation may not be an attractive factor to a potential buyer, the tribunal's $430,000 discount for the "stigma" associated with contaminated property appears sufficient to counteract the effect of that potentiality. *Id.*

Finally, petitioner argues that the tribunal improperly employed use-value rather than market-value in setting the assessment because the hearing referee opined that the property "continues to be utilized in an ongoing profitable business. No evidence or testimony was offered [to show] that the contamination affected the ability to lease vacant storage space in the building." Under the holding of *Safran Printing Co v Detroit*, 88 Mich App 376, 382-383; 276 NW2d 602 (1979), property may not be assessed on the basis of the value of its use to the owner. However, taken in context, this statement reflects the hearing referee's taking note of the fact that the contamination was not so severe as to render the property uninhabitable in any way. The Tax Tribunal adopted respondent's actual appraiser's figures, which were based on a compilation of the sales-comparison and capitalization-of-income approaches. These are both traditional approaches to valuation that were expressly approved by the Supreme Court in *Meadowlanes, supra* at 484-485. Therefore, petitioner's contention that the tribunal employed a use-value approach in determining the

true cash value of petitioner's property is without merit.

Affirmed.