# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL TENNIS CORPORATION,

Petitioner-Appellant,

v

CITY OF SOUTHFIELD,

Respondent-Appellee.

UNPUBLISHED
July 19, 2016

No.  326656
Michigan Tax Tribunal
LC No.  00-451786

Before:  OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Petitioner, International Tennis Corporation, appeals as of right the Michigan Tax Tribunal's March 10, 2015 final opinion and judgment finding the cost-approach analysis promulgated by respondent, the City of Southfield, to be the correct methodology to establish the true cash value of the subject property located at 29350 Northwestern Highway in Southfield, Michigan.  We affirm.

On appeal, petitioner argues that the tribunal's determination regarding the assessed value of the property was erroneous because it does not reflect an independent valuation by the tribunal.  Rather, petitioner contends, the tribunal simply adopted the methodology and findings of respondent's appraiser.  Petitioner further asserts that the tribunal's decision was not based on competent and substantial evidence and is the result of inaccurate methodology.  Petitioner also challenges the tribunal's statements regarding the credibility of petitioner's appraiser, Daniel Tomlinson, along with the tribunal's alleged failure to fully consider or recognize the limited uses of the property and the related consent judgments.  Petitioner additionally disputes the conclusions of the tribunal based on its alleged failure to address issues pertaining to the highest and best uses of the property.  Specifically, petitioner contends that the tribunal's acceptance of respondent's separate valuations and aggregation of the residential and commercial portions of the property was erroneous because the sum of the value of the various parts of the property is not equivalent to the value of the whole.  Based on these alleged errors, respondent ultimately asks that we reverse the tribunal's opinion and judgment and remand this matter to the tribunal for rehearing.

Our Supreme Court has set forth the applicable standard of review to be used in reviewing decisions of the tribunal as follows:

-1-

The standard of review of Tax Tribunal cases in multifaceted. If fraud is not claimed, this Court reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the Tax Tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo. [*Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 75; 780 NW2d 753 (2010) (citations, footnotes, and internal quotation marks omitted).]

"Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence. Failure to base a decision on competent, material, and substantial evidence constitutes an error of law requiring reversal." *Meijer, Inc v City of Midland*, 240 Mich App 1, 5; 610 NW2d 242 (2000) (citations omitted). "It is exclusively for the tribunal to assess the credibility of the witnesses who appear before it," and this Court will defer to these determinations. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 703; 840 NW2d 168 (2013).

At issue in this case is the tribunal's determination of the true cash value of the subject property. The term "true cash value" is statutorily defined in MCL 211.27(1) as follows:

"[T]rue cash value" means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at a forced sale.

In accordance with MCL 211.27a(1), "property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963."

On appeal, petitioner argues the tribunal abdicated its responsibility to independently determine the true cash value of the subject property, but the record belies that assertion. First, based on its written opinion and order, it is apparent that the tribunal evaluated the various arguments and calculations by both parties' appraisers in detail, accepting and rejecting portions of the reports and testimony of each. In ruling that respondent's cost approach constituted the best evidence of true cash value, the tribunal indicated that the report submitted by respondent's appraiser "contained sufficient information to lead the reader to the same conclusion as the appraiser." This language does not reflect, as petitioner contends, a wholesale or unconsidered acceptance of respondent's appraiser's conclusion; rather, it reflects an actual review and determination that simply resulted in a similar finding. As we recognized in *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 641; 806 NW2d 342 (2011), "this Court has found no clear error by the fact-finder when it determines that the value of property lies within the range of values as testified to by experts." Second, the tribunal's determination of true cash value for the property is actually closer to the true cash value proposed by petitioner than that proposed by respondent for one of the tax years at issue. As such, the tribunal's determination of the true cash value differs from that asserted by both parties, falling in between the true cash values set forth by each, and, thus, does not constitute a wholesale acceptance of respondent's conclusion or demonstrate a lack of independent valuation.

In this instance, the tribunal explained in detail its reasoning to support its factual and legal conclusions. The tribunal rejected petitioner's use of the sales comparison approach based on the lack of comparable properties. The obvious distinctions involving size, usage, and location of the comparison properties to the subject property demonstrated an overt lack of similarity and called into question the propriety of their use for determining a comparative value. Similarly, the tribunal engaged in a detailed analysis and discussion of respondent's use of the income approach to valuation, finding that the absence of "market based foundations" rendered the valuation deficient. Addressing the use of the cost approach by the litigants, the tribunal noted similarities and distinctions in their separate analyses and conclusions. It charted data used by petitioner and respondent. It discussed the discrepancies in square footage used for the valuation and the replacement rates deemed applicable. The tribunal went into considerable detail regarding its concerns with petitioner's cost-approach valuation, including various errors and omissions by the appraiser. It also reviewed respondent's use of depreciation in the determination of value, along with the calculations for the various adjustments and deductions made, finding the methodology to be acceptable and appropriate. As such, the tribunal provided a thorough and reasoned analysis to support its factual and legal conclusions based on the evidence submitted by both parties.

In accordance with MCL 205.737(3), a petitioner bears the burden of proof to establish the true cash value of a property before the tribunal. Although the tribunal is required to make an independent finding of true cash value, it is not required to accept either party's theory of valuation. *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998). "It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination of true cash value." *Id*. at 389-390. Petitioner's burden of proof to establish the correct true cash value for a property "encompasses two separate concepts: (1) the burden of persuasion, which does not shift during the course of the hearing; and (2) the burden of going forward with the evidence, which may shift to the opposing party." *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 354-355; 483 NW2d 416 (1992). Despite the tribunal's duty to make an independent finding regarding a property's true cash value, the tribunal is not foreclosed from dismissing the evidence submitted by a party. *Id*. at 355.

Petitioner challenges the methodology selected by the tribunal as inaccurate. A valuation method is deemed to be wrong only if it fails to lead to the most accurate determination of a taxable property's true cash value or fair market value. *President Inn Props, LLC*, 291 Mich App at 639. In this matter, the tribunal found the cost approach to be the most appropriate valuation method, rejecting the proffered valuations offered by petitioner and respondent under the comparable sales approach and the income approach for very specific reasons. The tribunal found respondent's evidence and method of applying the cost approach to be more reliable. In making this determination, the tribunal reviewed considerable data and calculations submitted by petitioner and respondent in support of their valuations. The tribunal did not simply adopt respondent's assessments for the tax years at issue. Only after finding petitioner's and respondent's methodologies under the sales comparison and income capitalization approaches to be deficient and evaluating the accuracy of respondent's proposed cost approach to valuation did the tribunal determine the true cash value of the property, arriving at its own figure. As such, we conclude that the tribunal's approach was more than sufficient to satisfy its duty to independently

determine the true cash value of the property and was based on substantial and competent evidence.

> We have explained as follows:

> The tribunal must at least consider the other traditional methods of determining true cash value, and has the duty to determine the property's true cash value using the approach that most accurately reflects the value of the property. Specifically, the tribunal must consider multiple approaches to determine . . . true cash value, correlating, reconciling, and weighing the values derived under the various approaches to reach a final estimate of the property's value. [*Detroit Lions, Inc*, 302 Mich App at 704-705 (citations and internal quotation marks omitted).]

Because the cost approach is a recognized method for valuation, and when viewed in conjunction with the tribunal's review of the submitted evidence regarding the valuation of the subject property, the alternative methodologies of valuation proposed, and its own reconciliation and calculations in determination of true cash value, petitioner's contention that the tribunal adopted a wrong or inaccurate methodology lacks merit.

Petitioner also takes issue with the tribunal's statements questioning Tomlinson's credibility. The tribunal indicated that it found "[t]he overall credibility of Tomlinson [to be] tainted due to errors and reliance on the work file as the appraisal lacked information that is customarily found in the reports relied upon by the Tribunal." "The credibility of the witnesses is a matter for the Tribunal to determine." *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 436; 830 NW2d 785 (2013). The tribunal's questioning of Tomlinson's credibility did not occur in a vacuum or as a blanket statement. Rather, the tribunal specifically identified errors in Tomlinson's report and methodology. For instance, the tribunal concluded that Tomlinson failed to consider "a large area of newer renovation that was either undervalued or not valued at all." In addition, it explained that the multiplier of .958 used by Tomlinson in his cost-approach analysis was determined to "underestimate[] the cost." The tribunal noted that although the building had a multitude of uses, Tomlinson "did not consider any additional cost/value of the fitness area, rehab center, basketball courts, indoor pool, squash or racquetball courts." Further areas critiqued by the tribunal were Tomlinson's erroneous calculations for the 2013 tax year and the lack of "detail and specificity" in his report. The tribunal also concluded that Tomlinson failed to place certain relevant information in his appraisal report and relied on information contained in his work file. Despite this deficiency, the tribunal reviewed the work file and ascertained "that the wrong MVS pages were used to cost the subject property for tax year 2013." Thus, although this Court does defer to the credibility determinations of the tribunal, it is noteworthy that the tribunal has sufficiently identified valid concerns regarding Tomlinson's credibility. *Detroit Lions, Inc*, 302 Mich App at 703.

Petitioner's implication that the tribunal's focus on the failure of Tomlinson to include information in his appraisal report rather than in his work file is indicative of error or bias is without merit. The tribunal indicated that it had informed the litigants, prior to the hearings, regarding what should be included in their appraisal reports, and this was reiterated at trial. Despite an expressed preference for all relevant information to be contained in the appraisal reports, the tribunal permitted petitioner to identify those documents relied upon by Tomlinson

-4-

for his testimony and appraisal throughout the hearing for inclusion as exhibits and to facilitate the tribunal's review and consideration. As such, we discern no error or bias in this regard.

Petitioner also contends the tribunal erred in failing to consider the highest and best use of the property in its determination of true cash value. In support of this contention, the petitioner asserts that the tribunal failed to give adequate consideration to the zoning encumbrances on the property or to recognize that the sum of the separate valuations for residential and commercial sections of the property, despite aggregation, are not necessarily equivalent to the value of the entire property in conjunction with the effect of the consent judgment's restrictions.

The property at issue in this case is subject to two types of zoning: (1) commercial zoning (B-3) of 21.98% of the property and (2) residential zoning (R-2) for the remaining 78.02% of the acreage. Based on a 1975 consent judgment, and various subsequent amendments to that judgment, a non-conforming use is permissible for the property, thereby allowing the operation of the current commercial enterprise. Petitioner opined that the highest and best use of the property as "vacant" was to "[h]old for future development," with the highest and best use for the property "as improved" was the "[c]ontinued use of the existing improvements as an athletic and tennis development." Respondent's expert, Laurence G. Allen, concurred that the highest and best use of the property would be its continued use as an athletic facility. Alternatively, Allen opined that a combined commercial and residential development, in accordance with the acknowledged zoning restrictions for the property, would comprise a highest and best use. While indicating, perhaps, different ranking or prioritization, there appears to be no actual dispute between the experts regarding the highest and best use of the property.

Contrary to petitioner's suggestion on appeal, in making its findings of fact, the tribunal acknowledged the unique zoning of the property, the existence of the consent judgment, and the opinions of both experts regarding the highest and best use for the property. "[T]o determine true cash value, the property must be assessed at its highest and best use. Highest and best use 'recognizes that the use to which a prospective buyer would put the property will influence the price which the buyer would be willing to pay.' " *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 33; 737 NW2d 187 (2007) (citations omitted).

> Highest and best use means the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use. A highest and best use determination requires simply that the use be legally permissible, financially feasible, maximally productive, and physically possible. [I]t is the duty of the tribunal to hypothesize the highest probable price at which a sale would take place. [E]xisting use may be indicative of the use to which a potential buyer would put the property and is, therefore, relevant to the fair market value of the property. [*Detroit Lions, Inc*, 302 Mich App at 697 (citations and internal quotation marks omitted; alterations in original).]

"[E]ven if a parcel has a special purpose and limited market, its existing use may still constitute its highest and best use and provide the best evidence of its usual selling price." *Id*. at 699.

In its acceptance and use of cost-approach valuation, the tribunal impliedly asserted the highest and best use of the property to be its continued use as an athletic facility. This methodology accounted for the zoning variations of the property and the consent agreement, which permits its use as a commercial enterprise despite the smaller percentage of the property's acreage being zoned commercial.

> [T]he cost approach is another type of comparative or market approach. The land is considered to be unimproved and valued by methods [stated elsewhere in the State Tax Commission Assessor's Manual]. The reproduction cost or replacement cost of the improvements is developed by comparison with the cost of new improvements, based on current prices of labor and materials for construction of similar improvements. [*Antisdale v City of Galesburg*, 420 Mich 265, 276, n 1; 362 NW2d 632 (1984).]

Petitioner's claim that the tribunal ignored or failed to consider the zoning encumbrances is belied by its recognition and discussion of the appraisal by Allen, which "included all of the details for each vacant land sale and the method for extracting the adjustments from the market for both the residential and commercial zoning." Petitioner's suggestion that the tribunal ignored the effect of the consent judgment on the property is disingenuous as the valuation of the property based on its current usage inherently recognizes the unique zoning and legal factors impacting and restricting the development of this property. The tribunal's determination cannot be construed as inconsistent with petitioner's suggestion that the highest and best use of the property is to hold for future development as any future development will have to adhere to the noted zoning and use restrictions and impliedly suggests the construction of another multisport athletic facility.

Further, it is difficult to comprehend petitioner's contention that the methodology used by Allen failed to adjust for the overall size of the property. As discussed and charted by the tribunal, Allen examined land sales in accordance with the subject property's zoning with adjustments "for market conditions." The very fact that Allen's land value appraisal comprised an aggregation of the commercial and residential land values indicates the calculation of an overall value. Notably, the parcels used by Tomlinson in his calculations were primarily residential, with only one parcel identified as "mixed use," which arguably resulted in an underestimation of the value of the land by ignoring its commercial usage potential. It is unlikely that petitioner is arguing that the entirety of the parcel was not valued as commercial, premised on the existence of the consent agreement, as such a valuation would have increased the land value and subsequent tax consequences.

Petitioner further asserts the impropriety of the inclusion of an entrepreneurial incentive as contrary to the consistent-use doctrine in respondent's calculation of true cash value under the cost approach, suggesting that it serves to inflate the value of the property. First, petitioner did not object to this calculation before the tribunal.

> This Court will generally decline to address unpreserved issues unless "a miscarriage of justice will result from a failure to pass on them, . . . the question is one of law and all the facts necessary for its resolution have been presented, or [it is] necessary for a proper determination of the case." [*Autodie LLC v City of*

*Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014) (internal quotation marks omitted; alterations in original).]

Consequently, because this Court lacks the benefit of a decision by the tribunal and sufficient briefing by the litigants, we could decline to review the issue. *Id*. In any event, petitioner's assertion is at odds with the definition of the cost approach cited by the tribunal from a publication by the Appraisal Institute (The Appraisal of Real Estate (Chicago: 14th ed, 2013, p 47)), which states, in pertinent part, as follows:

> Entrepreneurial incentive (the amount [a] developer expects to receive) or entrepreneurial proofing (the amount actually received) may be included in the value indication. This approach is particularly useful in valuing new or nearly new improvements and properties that are not frequently exchanged in the market.

It would appear to be inherently consistent with a cost-approach valuation, which evaluates the cost of constructing a reproduction or replacement of an existing facility, to include an entrepreneurial incentive as a cost.

Petitioner further suggests that inclusion of the incentive is contradicted by respondent's assertion that the property should be held for future development. As noted, the use of an entrepreneurial incentive is consistent with a cost-approach valuation. In addition, this Court has indicated "that valuation can be determined strictly on a hypothetical basis, with the hypothetical buyer looking at the costs of building a new facility to determine the usual price of an existing facility even if a real buyer would not consider building such a facility." *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 403. Because a developer's anticipated profit or benefit is a legitimate factor for consideration, it was properly included in the cost-approach valuation for the subject property.

In sum, the tribunal did not simply adopt respondent's valuation for the applicable tax years as petitioner contends. Rather, the tribunal engaged in a detailed analysis of the various valuation methodologies used by the parties and rejected the sales comparison and income approaches premised on their lack of reliability for use with the property at issue in this case. The tribunal did not merely accept the facts, figures, and data proposed by respondent; rather, it engaged in an analysis that resulted in its own calculation of true cash value. Because the tribunal's approach was sufficient to satisfy its duty to make an independent determination of true cash value and was based on competent and substantial evidence, we affirm its March 10, 2015 final opinion and judgment.

Affirmed.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien